**NU–WAY SYSTEMS OF INDIANAPO-
LIS, INC., Plaintiff–Appellant,**

v.

**BELMONT MARKETING, INC. and
Service Finance Company,
Defendants–Appellees.**

No. 80–1378.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 20, 1980.

Decided Dec. 4, 1980.

M. Anne Wilcox, Indianapolis, Ind., for plaintiff–appellant.

Alan H. Lobley, Indianapolis, Ind., for defendants–appellees.

Before CUMMINGS and BAUER, Circuit Judges, and TEMPLAR, Senior District Judge.*

CUMMINGS, Circuit Judge.

Plaintiff Nu–Way Systems of Indianapolis, Inc. (Nu–Way) appeals from the district court's pretrial order dismissing its amended complaint against defendant Service Finance (Service) for want of personal jurisdiction and denying Nu–Way's motion to remand to state court for want of complete diversity. Nu–Way's action against co–defendant Belmont Marketing, Inc. (Belmont) was permitted to proceed in the federal court. We affirm.

I

Nu–Way is a Delaware corporation engaged in business in Marion County, Indiana, retailing merchandise at a discount (App. 45). Service is a Delaware corporation with its principal place of business in Pittsfield, Illinois. Service is in the business of lending money for personal and business purposes, including the purchase of retail installment contracts from merchants. On December 26, 1978, Nu–Way and Service entered into an agreement by which Nu–Way was to assign some of the accounts receivable of its Indiana patrons to Service in return for needed capital funds. This contract was arranged with the assistance of co–defendant Belmont pursuant to a separate agreement between Nu–Way and Belmont.

On June 28, 1979, Nu–Way initiated this action in the Superior Court of Marion County, Indiana, alleging breach of contract and conspiracy to restrain trade by Service. The complaint also alleged breach of contract, conspiracy to restrain trade, fraudulent misrepresentation and tortious interference with contractual relations by Belmont. As noted, the claims against Belmont are still pending in the district court and are not in issue in this appeal. The complaint stated that Nu–Way was an Indiana corporation with its principal place of business in Indiana and that Service and Belmont were Illinois corporations with their principal places of business in that state.

On July 30, Service filed a petition for removal in the district court, alleging that said court had original jurisdiction on the basis of diversity of citizenship and that removal was proper under 28 U.S.C. § 1441.[1] Consistent with Nu–Way's complaint, Service alleged that it and Belmont were Illinois corporations and that Nu–Way was an Indiana corporation. On August 14, after the case had been removed to federal court, Nu–Way filed an amended complaint in which it indicated for the first time that it was in fact a Delaware corporation and not an Indiana corporation. On or about August 30, Service moved to dismiss the complaint against it for want of personal jurisdiction or, in the alternative, for a change of venue to the federal district court in Quincy, Illinois. In support of this mo-

---

* The Honorable George Templar, Senior District Judge of the District of Kansas, is sitting by designation.

1. Belmont did not join in the petition for removal but did file a brief in opposition to Nu–Way's subsequent motion for remand to state court.

tion was an affidavit of the president of Service in which it was stated, *inter alia*, that Service also was a Delaware corporation. Nu–Way thereupon filed a motion for remand to state court, alleging that diversity was incomplete because both Service and Nu–Way were Delaware corporations.

On December 10, the district court held that it lacked personal jurisdiction over Service and therefore granted Service's motion to dismiss the amended complaint against it. At the same time, the court denied Nu–Way's motion to remand the case to state court on the reasoning that diversity between Nu–Way, a Delaware corporation, and Belmont, an Illinois corporation and the only remaining defendant, was complete. On February 21, 1980, the court certified that there was no just reason for delaying the entry of final judgment in favor of Service, entered judgment to that effect and dismissed the amended complaint with respect to Service pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Denial of a motion to remand is ordinarily not subject to interlocutory appeal. Because the case is properly before this Court for review of a final judgment and the remand question is jurisdictional, we must reach that issue here as well. *Jones v. General Tire & Rubber Co.*, 541 F.2d 660 (7th Cir. 1976); *Kysor Industrial Corporation v. Pet, Inc.*, 459 F.2d 1010 (6th Cir. 1972).

## II

■ Nu–Way contends that the district court erred in dismissing the amended complaint against Service because personal jurisdiction is conferred over Service in this case by Subsections (A)(1), (A)(3) and (A)(4)

of the Indiana "long–arm statute" (Trial Rule 4.4, Indiana Rules of Trial Procedure).[2] Its arguments with respect to all three provisions are unpersuasive.

■ Subsection (A)(1) extends jurisdiction over nonresidents "doing any business" in Indiana. Judge Noland properly noted that this subsection was intended to extend the *in personam* jurisdiction of Indiana courts and federal courts sitting in that state to the constitutional limits established under the Due Process Clause of the Fourteenth Amendment (see *Chulchian v. Franklin*, 392 F.Supp. 203 (S.D.Ind.1975), affirmed, 532 F.2d 757 (7th Cir. 1976)) and then held that Service had not established the "minimum contacts" with Indiana sufficient under *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, to be required to defend a suit in that state. We agree.

It is uncontroverted that Service does not now and has never had any office or place of business in Indiana or any agent, officer or employee performing any service on its behalf in that state and that Service has had no contact with Indiana other than the events giving rise to this action. It is further uncontroverted that the contract between Nu–Way and Service was solicited, drafted, negotiated and entered into in Illinois, that the commercial paper acquired by Service under the contract was to be acquired and in fact was acquired at its office in Illinois, that all payments to Service were to be made at its office in Illinois, and that all contacts between the parties occurred in Illinois or by interstate mail or telephone.

---

2. Nu–Way also argues that the district court committed reversible error by allocating to it the burden of proof on the personal jurisdiction question contrary to Trial Rule 8(C) of the Indiana Rules of Trial Procedure, which places the burden of proof on the moving party. However, despite ambivalent phraseology, the district judge did not actually shift the burden of proof. In essence he ruled that Nu–Way had failed to show "a basis" for the exercise of *in personam* jurisdiction and had failed to contradict any of the facts in the record, which, standing uncontradicted, were insufficient to establish the requisite "minimum contacts" with Indiana as required by *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. Any presumption of jurisdiction under Trial Rule 8(C) is of course rebuttable. Moreover, in another recent Indiana diversity case Chief Judge Steckler held the burden of proof to show personal jurisdiction based on the Indiana long–arm provision is on the plaintiff if challenged, as here, by a motion to dismiss. *Oddi v. Mariner–Denver, Inc.*, 461 F.Supp. 306, 310 (S.D.Ind.1978).

Nu–Way's argument is that Service's activities under the contract with Nu–Way constitute "doing any business" in Indiana because the underlying transactions, *i. e.,* the transactions between Nu–Way and its customers, took place in Indiana and because, as of July 1979, Service had been assigned 216 Nu–Way customer accounts with an aggregate outstanding balance of $129,415.18. Nu–Way relies particularly on the fact that the underlying transactions are subject to the Uniform Consumer Credit Code enacted in Indiana in 1971. But there is nothing in the record to indicate that Service has taken any action to collect any of the accounts assigned to it, and since the contract provides that the assignments are with full recourse to Nu–Way, Service may never take any such action. It is, of course, possible that Service may in the future render itself subject to Indiana jurisdiction because of some act taken in connection with the accounts or, indeed, because of some other unrelated act or course of conduct. Here we are concerned with the present, and the Uniform Consumer Credit Code, plainly irrelevant to the commercial transactions between Service and Nu–Way, does not confer jurisdiction over Service either directly or indirectly in this case.

The fact that the parties contemplated that assignable accounts would be generated through Nu–Way's Indiana retail business does not, as Nu–Way would have it, mean that the parties contemplated performance of the contract in Indiana. The contract does not require Nu–Way to generate accounts or even to assign them to Service. Its only performance obligation is to repurchase from Service any accounts which subsequently become delinquent. Such repurchase is to be completed with a payment to Service at its Illinois office, and the payment itself could be made by a check from anywhere. Consequently, Nu–Way's reliance on cases holding jurisdiction proper where the contract necessarily required plaintiff's performance in the forum state is misplaced. See, *e. g., Biltmoor Moving and Storage Co. v. Shell Oil Co.,* 606 F.2d 202 (7th Cir. 1979). In the absence of such a contractual requirement, plaintiff's performance in the forum state is of itself an insufficient basis for jurisdiction over a nonresident defendant. *Lakeside Bridge & Steel Co. v. Mountain State Construction Co., Inc.,* 597 F.2d 596 (7th Cir. 1979). As the Supreme Court has stated:

> "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. * * * [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State * * *." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283. See also *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490.

Because the record here reveals no such purposeful act, the district court properly concluded that Service is not "doing any business" in Indiana within the scope of subsection (A)(1) of Trial Rule 4.4.

Subsection (A)(3) confers jurisdiction over a nonresident who causes personal injury or property damage in Indiana as the result of an act done outside the state

> "if he regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue or benefit from goods, materials, or services used, consumed, or rendered in this state * * *."

Subsection (A)(4) confers jurisdiction over a nonresident who has

> "supplied or contracted to supply services rendered or goods or materials furnished or to be furnished in this state * * *."

Nu–Way's argument with respect to both provisions is that Service, through its contract with Nu–Way, was indirectly supplying consumer credit to Nu–Way's Indiana customers and therefore supplying a service in Indiana from which it derived substantial revenue or benefit. We agree with the district court that Service's activities under the contract "could only in the most imaginative sense be viewed as the result of a contract to 'supply services'" in Indiana

within the meaning of subsection (A)(4) (Memorandum Opinion, Pl. Br. Addendum I, at 5). To the extent that a contract for the sale of commercial paper (or, as Service characterizes it, a contract to loan money) can be considered a contract to supply services at all, that "service" was rendered to Nu–Way, not Nu–Way's customers, and in Illinois, not Indiana. Subsection (A)(3) is also inapplicable on these facts. Any revenue or benefits accruing to Service under the contract, if they derived from services rendered at all, derived from services rendered in Illinois, and, as discussed above with respect to subsection (A)(1), Service was not "regularly" doing business or engaging "in a persistent course of conduct" in Indiana simply by virtue of its having been assigned Nu–Way's accounts receivable from Indiana patrons.

For the foregoing reasons, the district court did not err in dismissing Nu–Way's amended complaint against Service for want of personal jurisdiction.

### III

 Nu–Way also contends that the district court erred in denying its motion to remand to the state court because the petition for removal had been granted improvidently and without jurisdiction. The right to removal to a federal forum is, of course, generally established on the basis of the record as it stands at the time the petition for removal is filed. *Saint Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 291–292, 58 S.Ct. 586, 591–592, 82 L.Ed. 845. Both Nu–Way's original complaint and Service's petition for removal contained allegations establishing the propriety of removal. It was not until after Nu–Way's amended complaint and Service's motion to dismiss had been filed in the district court that a possible lack of subject matter jurisdiction first became apparent. In any event personal jurisdiction over Service in Indiana was lacking. It has long been settled that "defendants over whom the court has not acquired jurisdiction may be disregarded in removal proceedings." *Cummunity Build-*

*ing Co. v. Maryland Casualty Co.*, 8 F.2d 678, 679 (9th Cir. 1925), certiorari denied, 270 U.S. 652, 46 S.Ct. 351, 70 L.Ed. 782. Since Service was never properly a party to this suit and diversity therefore in fact was always complete as to Nu–Way and Belmont, the district court properly denied Nu–Way's motion to remand.

Order affirmed.[3]

---

**3.** This decision does not affect Nu–Way's right to sue Service in Illinois.