**STOUTCO, INC., Plaintiff,**

v.

**AMMA, INC., Monarch Distributing, Consumers Buying Service, Monarch American Marketing, American Marketing, Inc., and John Pinciaro, Defendants.**

No. 83–284.

United States District Court, N.D. Indiana, South Bend Division.

Sept. 16, 1983.

Bruce B. Marr, Richard M. Treckelo, Elkhart, Ind., for plaintiff.

Thomas J. Hall, South Bend, Ind., for defendants.

## MEMORANDUM AND ORDER

SHARP, Chief Judge.

This action was originally brought by Stoutco, Inc. (Stoutco) on May 25, 1983 by the filing of its complaint in the Elkhart Superior Court No. 2, Elkhart, Indiana. The complaint consists of three counts. Count I requests the sum of Thirty-seven Thousand Seven Hundred Thirty-nine and 46/100 Dollars ($37,739.46) upon a claim for goods sold defendants which remains unpaid. Count II requests full payment of a check in the amount of Thirty-seven Thousand Dollars ($37,000.00) which was stopped by defendants, plus statutory interest at the rate of eighteen percent (18%) per annum on the face amount of the check from the date of execution, pursuant to Indiana Code 28–2–8–1. Count III of the complaint requests treble damages pursuant to Indiana Code 34–4–30–1 and Indiana Code 35–43–5–5 due to the stop payment on said check without legal cause.

On June 29, 1983, the defendants filed a petition in this court requesting that the above-entitled cause be removed to this court. On July 11, 1983, defendants filed a Motion for Dismissal which presents as its sole issue whether AMMA is subject to the personal jurisdiction of a federal court sitting in Indiana upon Stoutco's complaint.

Facts contained in the pleadings and affidavits filed in support and in opposition to AMMA's Motion for Dismissal, which are relevant to the jurisdictional issue raised by AMMA's Motion, are as follows:

1. Representatives of AMMA and Stoutco discussed the possible sale of Foxfire furnaces and accessories by Stoutco to AMMA at a meeting in Atlantic City, New Jersey.

2. Subsequent to the meeting in New Jersey, Stoutco prepared and executed a Letter Agreement between Stoutco and AMMA in the state of Indiana for the sale of Foxfire furnaces to AMMA.

3. AMMA's employees and officers made numerous telephone calls to Stoutco's office in Indiana regarding sales, shipments and warranty obligations.

4. All shipments of goods were shipped to Connecticut, F.O.B., Bristol, Indiana.

5. On March 3, 1983, AMMA sent a truck into the state of Indiana to pick up a shipment of Foxfire furnaces from Stoutco's warehouse in Bristol, Indiana.

6. That the products sold by AMMA in Indiana, subsequent to the Letter Agreement, included Foxfire furnaces, the payment for which is subject to Count I of plaintiff's complaint.

7. AMMA purposely and intentionally availed itself of the benefits and privileges of Indiana law by obtaining an Indiana retail merchant's certificate and sales tax number for purposes of selling a variety of products, including Foxfire furnaces, within the state of Indiana.

8. AMMA purposely and intentionally availed itself of the benefits and privileges of Indiana law by holding at least four sales shows in Indiana, soliciting sales, selling a variety of products, including Foxfire furnaces, in Indiana and by advertising its Indiana sales shows in Indiana newspapers.

9. Although the newspaper advertisements in Indiana listed a number of different items and furnaces for sale, on at least one occasion the only furnaces available for purchase were Foxfire furnaces, the payment for such furnaces from AMMA to Stoutco being the subject of Stoutco's complaint.

10. AMMA sent three payments for Foxfire furnaces from Connecticut to Stoutco's office in Bristol, Indiana, the last payment being the subject of Stoutco's complaint.

The present Motion for Dismissal is restricted by AMMA to the sole issue of whether AMMA is subject to personal jurisdiction in Indiana upon Stoutco's complaint. AMMA concedes that it has "contacts" with the State of Indiana, but argues that such contacts are not "sufficient" to satisfy due process for this court's personal jurisdiction over AMMA for purposes of defending Stoutco's complaint.

Defendant AMMA contends that maintenance of this action in the United States District Court for the Northern District of Indiana, South Bend Division, offends traditional notions of fair play and substantial justice, and, thus, violates the due process clause of the Constitution of the United States. In *Oddi v. Mariner-Denver, Inc.*, 461 F.Supp. 306, 308 (S.D.Ind.1978) the court held that Indiana's long-arm statute [Indiana Trial Rule 4.4(A)] may be invoked by a federal court sitting in Indiana. In pertinent part, Indiana Trial Rule 4.4(A) provides as follows:

(A) Any person or organization that is a non-resident of this State, ... submits to the jurisdiction of the courts of this State as to any action arising from the following acts committed by him or his agent:

(1) Doing any business in this State;

* * * * * *

In *Griese-Traylor Corp. v. Lemmons*, Ind. App., 424 N.E.2d 173 (1981), the Court of Appeals of Indiana held that Indiana courts need not perform a two-part analysis of whether the above statute allows the exercise of jurisdiction and whether that allowance accords with due process. Rather, the *Griese-Traylor Corp.* court held that Indiana courts need only engage in a "single search for the outer limits of what due process permits." *Griese-Traylor Corp.*, *Id.* at 180, citing *Oddi v. Mariner-Denver, Inc.*, 461 F.Supp. 306, 308 (N.D.Ind.1978).

For a state to exercise personal jurisdiction over a non-resident defendant, there must exist sufficient "minimum contacts" between the defendant and the forum state so that maintenance of the suit in the forum state does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95

(1945). Stoutco agrees with AMMA, that when a cause of action does not arise out of the foreign corporation's contacts with the forum state, more substantial contacts are required before due process is satisfied and personal jurisdiction can be obtained. However, it is not the quantity of contacts AMMA has with the State of Indiana, but the quality and nature of the contacts that is important in determining the present jurisdictional issue. *Id.* at 319, 66 S.Ct. at 159–60. In *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Supreme Court of the United States stated:

> When a corporation "purposefully avails itself of the privilege of conducting activities within the forum state," *Hanson v. Denckla,* 357 U.S. [235] at 253, 78 S.Ct. [1228] at 1240 [2 L.Ed.2d 1283], it has clear notice that it is subject to suit there, and can alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs onto customers, or, if the risks are too great, severing its connections with the State. *Id.* 444 U.S. at 297, 100 S.Ct. at 567.

The Supreme Court in *World-Wide Volkswagen Corp.* held that no jurisdiction existed under the facts presented in that case, and explained:

> Applying [jurisdictional] principles to the case at hand, we find in the record before us a total absence of those affiliating circumstances that are a necessary predicate to any exercise of state court jurisdiction. Petitioners carry on no activity whatsoever in Oklahoma. They close no sales and perform no services there. They avail themselves of none of the privileges and benefits of Oklahoma law. They solicit no business there either through salespersons or through advertising reasonably calculated to reach the State. *Id.* at 295, 100 S.Ct. at 566.

■ The facts in the present case demonstrate that AMMA fulfills each of the "affiliating circumstances" that the court required in *World-Wide Volkswagen Corp.* but which it found lacking. The facts in the present case demonstrate that AMMA has carried on conscious and deliberate activities within the state of Indiana with the purpose of targeting the Indiana market. They have closed sales of products, including sales of products the payment for which is the subject of Stoutco's complaint. AMMA has consciously and purposely availed itself of the privileges and benefits of Indiana law by obtaining a retail merchant's sales tax number, by conducting sales in Indiana, by sending a truck to Stoutco's warehouse in Indiana in an attempt to move Stoutco's products, and by soliciting business in Indiana both through salespersons and through advertising in this State's newspapers. The purposeful and pervasive quality and nature of AMMA's contacts with the State of Indiana satisfy due process and those purposeful activities give AMMA notice that it is subject to suit in Indiana. In *Perkins v. Benguet Consold. Min. Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), the Supreme Court held that jurisdiction over a non-resident corporate defendant by an Ohio court did not violate due process, even though the action did not arise from the contacts, due to the nature and quality of the corporate contacts with Ohio. *See also National Geographic Society v. California Board of Equalization,* 430 U.S. 551, 97 S.Ct. 1386, 51 L.Ed.2d 631 (1977); *Wilkerson v. Fortuno Corp.,* 554 F.2d 745, 749–50 (5th Cir.1977), *cert. denied,* 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977); *Hutter Northern Trust v. Door County Chamber of Commerce,* 403 F.2d 481 (7th Cir.1968).

In *Froning & Deppe, Inc. v. Continental Illinois,* 695 F.2d 289 (7th Cir.1982), the court rejected contentions that jurisdiction over a non-resident bank could be based upon a bank's mere acceptance of a check which indicated on its face its origin in the forum state. *Id.* at 291–92. In explaining its opinion, the *Froning & Deppe, Inc.* court stated as follows:

> We agree with the district court that the fundamentals of substantial justice as articulated in *International Shoe* and *World-Wide Volkswagen* would be offended by basing jurisdiction of a non-resident bank upon the bank's mere ac-

ceptance of a check which indicates on its face its origin in the forum state. Here, as in *World-Wide Volkswagen* the record contained no evidence that the defendant conducted sales or service in the forum state, solicited business through salespersons or advertising in the forum state, or sought to serve the forum state market indirectly. *World-Wide Volkswagen,* 444 U.S. at 295, 100 S.Ct. at 566. *Id.* at 292.

The *Froning & Deppe, Inc.* court distinguished decisions upholding jurisdiction containing facts demonstrating that the non-resident defendant deliberately targeted the forum state's market, *Taubler v. Giraud,* 655 F.2d 991 (9th Cir.1981), or reached the forum state's market through an extensive marketing program designated to blanket numerous states with its product, *Honeywell v. Metz Apparatewerke,* 509 F.2d 1137 (7th Cir.1975), stating that those cases involved "systematic and deliberate attempts by the defendant to penetrate the forum state's market for goods and services . . ." *Id.* at 292.

In contrast to the jurisdictional "contact" scrutinized in *Froning & Deppe, Inc.* decision, the present facts demonstrate that AMMA made a conscious, systematic and deliberate attempt to penetrate Indiana's market for goods and sales of good when it entered the present contract, obtained an Indiana retail merchant's certificate and sales tax number, advertised in Indiana newspapers, sent a truck into Indiana to pick up Stoutco's products and conducted sales shows in at least four major Indiana cities. The Indiana sales shows undertaken by AMMA would necessitate the shipment of products to Indiana and the use of AMMA employees to sell the products in Indiana.

Defendant AMMA also relies on *Nu-Way Systems, et al. v. Belmont Marketing, Inc.,* 635 F.2d 617 (7th Cir.1980). The *Nu-Way Systems* court held that maintenance of a suit in Indiana against an Illinois corporation violated due process and explained:

It is uncontroverted that Service does not now and has never had any office or place of business in Indiana or any agent, officer, or employee performing any service on its behalf in that state and that Service has had no contact with Indiana other than the events giving rise to this action. It is further uncontroverted that the contract between Nu-Way and Service was solicited, drafted, negotiated and entered into in Illinois, that the commercial paper required by Service under the contract was to be acquired and in fact was acquired at its office in Illinois, that all payments to Service were to be paid at its office in Illinois, and that all contacts between the parties occurred in Illinois or by interstate mail or telephone. *Id.* at 619.

and:

It is, of course, possible that Service may in the future render itself subject to Indiana jurisdiction or, indeed, because of some other unrelated act or course of conduct. *Id.* at 620.

Contrary to the facts in *Nu-Way Systems,* the present facts demonstrate that AMMA has undertaken purposeful and systematic acts and a deliberate course of conduct in Indiana. Requiring AMMA to defend the present suit in Indiana does not "offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

In *Oddi v. Mariner-Denver, Inc.,* 461 F.Supp. 306 (S.D.Ind.1978), the court stated:

The limit of this constitutional authority is the fairness of subjecting a defendant to suit in a distant forum. Only if the non-resident defendant has such "minimum contacts" with the state that the maintenance of the suit does not offend traditional notions of fair play and justice [citations omitted], or if the defendant has performed some act by which it purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws [citation omitted], may the forum, consistent with due process, extend its long-arm to embrace it. *Id.* at 308.

In *Oddi,* plaintiff brought an action in Indiana claiming damages for bug bites she received while staying at a Colorado hotel. Plaintiff neither alleged that the Colorado hotel had substantial contacts with Indiana nor alleged that defendants did any business in Indiana in response to defendants' Motion to Dismiss. *Id.* at 309–10. Thus, the *Oddi* decision is distinguishable from the present case since the pleadings and affidavits in the present case demonstrate substantial and purposeful contacts by AMMA in Indiana.

Since AMMA purposely availed itself of the privilege of conducting activities within the state of Indiana, AMMA has clear notice that it is subject to suit in Indiana. *World-Wide Volkswagen Corp.,* 444 U.S. at 297, 100 S.Ct. at 567.

In *Neiman v. Rudolf Wolff & Co.,* Ltd., 619 F.2d 1189 (7th Cir.1980), *cert. denied,* 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980), the court held that a London silver brokerage and its British agent were subject to personal jurisdiction in the United States District Court for the Northern District of Illinois, Eastern Division, in a suit brought by an Illinois resident for alleged breach of contract and conspiracy to deprive the Illinois resident of benefits of his contract with the silver brokerage. The *Neiman* court stated:

> The efforts of [Defendant] Gourlay to obtain orders through brokers in Illinois from customers generally, and not merely from Neiman, and the resulting orders placed by brokers for customers other than Neiman are relevant to the due process issue under the Supreme Court's analysis in a tort context in *World-Wide Volkswagen, supra.* [footnote omitted]. The *Neiman* transactions were "not simply . . . isolated occurrence[s], but [arose] from the efforts of [Defendant] [Wolff] to serve, directly or indirectly, the market for its product in other States." [citation omitted] *Id.* at 1194–95.

Regarding any possible inconvenience to defendants, an English corporation and citizen, to defendant in Illinois, the *Neiman* court stated:

Given Defendants' purposeful acts in Illinois, we do not find any inconvenience to amount to a denial of due process. *Id.* at 1195, n. 8.

The *Neiman* decision demonstrates that the court examining a motion to dismiss for lack of personal jurisdiction should look at the totality of the acts of defendants in the forum state. The fact that AMMA undertook a systematic and deliberate attempt to target the Indiana market, both by entering into the contract with Stoutco and by extensive activities within the State of Indiana to promote and sell products, is a factor which bears significantly upon the due process argument in the present motion. The purposeful activities of AMMA in Indiana and AMMA's activities outside Indiana which have a profound effect in Indiana do not support AMMA's argument that it is "unfair" to subject it to the jurisdiction of this court.

In *Charia v. Cigarette Racing Team, Inc.,* 583 F.2d 184 (5th Cir.1978), cited in *Neiman,* 619 F.2d at 1193, the court held that "isolated, sporadic transactions with residents of the forum state" do not subject a foreign corporation to the forum court's jurisdiction. However, an analysis of the *Charia* facts discloses that case is distinguishable from the present one.

In *Charia,* a Louisiana resident sued a Florida boatbuilder for breach of contract. The complaint was filed in the United States District Court for the Eastern District of Louisiana in New Orleans. The Fifth Circuit affirmed the district court's dismissal on the basis that there were insufficient minimum contacts to justify personal jurisdiction over the Florida defendant under the Louisiana long-arm statute. The plaintiff in *Charia* has seen advertisements which the defendant had placed in several national boating magazines. *Id.* at 186. The plaintiff wrote to the Florida defendant, visited the Florida boatbuilding plant, and ordered a boat. No written contract was ever signed by the parties. *Id.* at 186. The boat was shipped "F.O.B. Miami, Florida" to the plaintiff in Louisiana. The court found that the Florida defendant was not

qualified to do business in Louisiana and did not have any office, place of business, employees or agents in Louisiana. *Id.* at 187.

In contrast to the present facts which demonstrate that AMMA advertised extensively in Indiana newspapers, the *Charia* court, citing *Benjamin v. Western Boat Building Corp.*, 472 F.2d 723 (5th Cir.1973), cert. denied, 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 64 (1973), stated:

> [M]erely advertising in magazines of national circulation that are read in the forum state is not a significant contract for jurisdictional purposes. *Id.*

The *Charia* court also emphasized that the Florida corporation did not undertake any purposeful activity invoking the benefits and protection of Louisiana's law. *Id.* at 188. Specifically, the *Charia* court noted that neither Cigarette nor any of its employees ever physically set foot in Louisiana. *Id.* at 188. Regarding additional sales to Louisiana residents, the *Charia* court noted that in the five year period between 1971 and 1975, defendant Cigarette sold only four boats to Louisiana residents, including the boat to Charia, and all of these boats were shipped "F.O.B. Miami, Florida". Again, the *Charia* court noted that there was no evidence that "any employee of Cigarette was ever present in Louisiana." *Id.* at 189.

The *Charia* court held that Cigarette's isolated sales did not involve purposeful conduct within Louisiana so as to avail itself of the benefits and protection of Louisiana's laws. *Id.* at 189. As distinguished from the facts in *Charia*, this case demonstrates AMMA's systematic and purposeful conduct and activities in the State of Indiana and the benefits and protection of Indiana law received by AMMA.

The Court of Appeals of Indiana decision, *Woodmar Coin Center, Inc. v. Owen*, Ind. App., 447 N.E.2d 618 (1983) provides Indiana's most recent analysis of a foreign defendant's purposeful activities within the State of Indiana in relation to jurisdiction. Woodmar, an Indiana corporation, advertised silver coins for sale in *The Wall Street Journal*. Defendant Owen, a resident of Texas, phoned Woodmar regarding the ad. Both the plaintiff and the defendant conducted negotiations over the telephone. They entered an oral agreement for the sale of the coins and the coins were shipped from Indiana to Owen's bank in Texas for inspection. Owen decided the coins were not in a good condition, sent them back to Woodmar in Indiana, and Woodmar subsequently filed a complaint against Owen in Lake County, Indiana, claiming breach of contract. The Court of Appeals of Indiana held that personal jurisdiction over Owen existed without any evidence that Owen had ever set foot in Indiana, and that Owen "purposely availed himself of the benefits and responsibilities of doing business in this State by soliciting, negotiating and forming a contract with an Indiana resident." *Id.* at 621.

One due process requirement is that if there are "minimum contacts", rather than substantial contacts, the plaintiff's complaint must have an "appropriate nexus" with the minimum contacts such that the non-resident defendant might reasonably anticipate being hailed into the forum court. *W & W Farms, Inc. v. Chartered Systems, etc.*, 542 F.Supp. 56, 59 (N.D.Ind. 1982).

The facts of this case establish AMMA's substantial contacts with Indiana. There also exists an "appropriate nexus" between Stoutco's complaint and "minimum contacts" of AMMA with the state of Indiana such that maintenance of this suit does not offend traditional notions of fair play and substantial justice. The Letter Agreement, payments under which are the subject of Stoutco's complaint, was executed in Indiana. AMMA's employees made numerous telephone calls into Indiana to Stoutco headquarters regarding sales, shipments and warranties. The products sold by AMMA in Indiana included Foxfire furnaces, the payment for which is the subject of Stoutco's complaint. At least three payments made to Stoutco from AMMA were sent to Stoutco's headquarters in Indiana. Further, all shipments of goods between

Stoutco and AMMA were shipped to AMMA in Connecticut, F.O.B. Bristol, Indiana. On March 3, 1983, AMMA sent a truck into the State of Indiana to pick up a shipment of Foxfire furnaces. In *Agrashell, Inc. v. Bernard Sirotta Co.,* 344 F.2d 583 (2d Cir.1965), the Second Circuit Court of Appeals stated that the ownership or leasing of trucks by the non-resident corporation to transport goods through the forum state was a significant contact, allowing the defendant to enjoy "the benefits and protections of New York law in an overt physical manner." *Id.* at 588. Although the Seventh Circuit has criticized that portion of the *Agrashell, Inc.* decision stressing shipments F.O.B. the forum state, the transportation of goods by defendant in *Agrashell, Inc.* was noted as a distinguishable factor. *Lakeside Bridge & Steel v. Mountain State Const.,* 597 F.2d 596, 604, n. 14 (7th Cir.1979).

In *Griese-Traylor Corp. v. Lemmons,* Ind. App., 424 N.E.2d 173 (1981), the court stated that the phrase "doing any business" as employed in Indiana Trial Rule 4.4(A)(1) should not be more narrowly construed in cases involving foreign corporations than is the phrase as employed in Indiana Code 23–3–3–1. Indiana Code 23–3–3–1 provides:

> The engaging in any transaction or the doing of any business in this state by any foreign corporation not licensed nor admitted to do business in this state under any existing act or any act hereafter enacted shall be deemed equivalent to an appointment by such foreign corporation of the secretary of state, or his successor in office, to be the true and lawful attorney and agent of said corporation upon whom may be served all lawful processes, writs, notices, or orders in any action or proceeding against such foreign corporation arising or growing out of, directly or indirectly, any act or thing done by such corporation within the state of Indiana.

Stoutco concedes that the mere performance of contractual obligations by Stoutco in Indiana, not by AMMA, is insufficient, by itself, to confer jurisdiction over an out-of-state defendant, at least when the contract does not require the plaintiff to perform in the forum state. *Orton v. Woods Oil & Gas Co.,* 249 F.2d 198, 201 (7th Cir. 1957). However, as the facts contained in the affidavits supporting and opposing the present motion demonstrate, jurisdiction in the present case is not based merely on the fact that Stoutco performed its obligations in Indiana.

There is an appropriate nexus between the sales of Foxfire furnaces by AMMA in Indiana and the circumstances giving rise to Stoutco's complaint. The facts demonstrate that AMMA sold Foxfire furnaces in Indiana which were included in shipments which the present complaint attempts to collect. Stoutco has warranty obligations to those Indiana residents who bought Foxfire furnaces from AMMA pursuant to AMMA's sales shows performed in the state of Indiana. Apparently, AMMA believes that it can enter an agreement with an Indiana corporation to buy Indiana products, then sell those products as well as many other items to Indiana residents at Indiana sales shows pursuant to Indiana advertisements and not be subject to an Indiana suit brought for payment of the goods originally sold. Such a position is untenable in light of the purposeful and deliberate activities of AMMA within the state of Indiana.

In *W·& W Farms, Inc. v. Chartered Systems, etc.,* 542 F.Supp. 56 (N.D.Ind.1982), this court stated:

> The test for minimum contacts is a flexible one and the facts of each case on the issue of minimum contacts must be evaluated and the court should focus on the nature and quality of the contacts in determining whether minimum contacts exist which comport with due process. *Id.* at 59, citing *Lakeside Bridge & Steel Co. v. Mountain State Const. Co., Inc.,* 597 F.2d 596 (7th Cir.1979).

Although the "flexible" test regarding minimum contact is not without its limits, the facts in the present case demonstrate that maintenance of this suit in Indiana does not violate traditional notions of fair play and

substantial justice, and, thus, does not violate the due process clause of the Constitution of the United States.

The defendant's motion to dismiss for want of personal jurisdiction is DENIED.