**CUMIS INSURANCE SOCIETY, INC., a Wisconsin corporation, Plaintiff,**

v.

**SOUTH–COAST BANK, a California banking institution; Westlands Bank, a California banking institution, and Paine, Webber, Jackson & Curtis, Inc., a Delaware corporation, Defendants.**

**No. S 83–326.**

United States District Court, N.D. Indiana, South Bend Division.

May 29, 1984.

R. Kent Rowe, South Bend, Ind., for plaintiff.

William J. Reinke, Douglas K. Dieterly, South Bend, Ind., James D. Adducci, Michael B. Roche, Chicago, Ill., John C. Hamilton, South Bend, Ind., for defendants.

### MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

Plaintiff, Cumis Insurance Society, Inc. (Cumis), initiated this proceeding by filing a complaint in this court on July 25, 1983. This cause is before the court on motions to dismiss, for change of venue and for § 1404(a) transfer of venue of defendants, South-Coast Bank (South-Coast) and Westlands Bank (Westlands). The two California banks contend, first, that this court has no *in personam* jurisdiction over them in that the Indiana long arm statute does not cover their activities. Second, the banks argue that, if the court concludes that it does not have jurisdiction, venue should be changed to the Central District of California. Alternatively, assuming that the court does not grant the motion to change venue pursuant to 28 U.S.C. § 1391(a), defendants move this court to exercise its discretion under 28 U.S.C. § 1404(a) and transfer this

cause to the Central District of California as the preferred place of venue. Jurisdiction of this court is predicated upon diversity of citizenship pursuant to 28 U.S.C. § 1332. For the reasons set forth below, the motions of defendants, South-Coast Bank and Westlands Bank are denied.

## I.

AAA Credit Union (AAA), a federal credit union located in South Bend, Indiana, serves the employees of various companies located in Indiana. During the period July 1981 through November 1981, Larry Winsch (Winsch) was employed by AAA as an investment manager and loan officer. While acting in such a capacity, Winsch opened a money market account at defendant, Paine, Webber's South Bend branch office on or about July 3, 1981 through the use of an allegedly forged AAA corporate resolution.

On February 27, 1981, AAA purchased a $100,000 certificate of deposit (CD) with a maturity date of August 26, 1981 from South-Coast. Such purchase was made through the services of First United Fund, Ltd. (First United). First United acts as a broker between entities seeking to place their funds in high interest bearing commercial paper and financial institutions interested in receiving such funds.

Upon maturity of the CD, South-Coast mailed a maturity notice to AAA. On or about August 26, 1981, South-Coast issued a cashier's check, payable to the order of AAA, in the principal amount of $100,000. Separate checks were issued for the interest due on the CD.

In late May or early June 1981, Winsch also contacted Professional Asset Management (Professional). Like First United, Professional was in the business of brokering certificates of deposits between purchasers and financial institutions. On July 3, 1981, AAA purchased a $100,000 CD from Westlands bearing an interest rate of 19.5% with a maturity date of August 31, 1981. Upon maturity of the CD, Westlands mailed a maturity notice to AAA in Indiana. Thereafter, on or about August 31, 1981, Westlands issued a cashier's check payable to the order of AAA in the amount of $103,152.05, comprising both principal and interest due on the CD.

In early September 1981, Winsch delivered both checks to the South Bend branch of Paine, Webber for deposit in AAA's money market account opened the preceding July. Paine, Webber accepted both checks without AAA's endorsement, endorsed them and negotiated them. After the check from Westlands was returned to Paine, Webber for missing or irregular endorsement, it appears that Paine, Webber returned the check to AAA after which AAA's name was endorsed. Late in September after the check had been processed by at least two other banks (The First National Bank of Chicago and the Federal Reserve Bank of Los Angeles), Westlands paid the proceed of the check to Paine, Webber.

In November 1981, Winsch directed Paine, Webber to wire $200,000 in funds from the AAA money market account with its South Bend branch to Continental Illinois Bank to be deposited to an account "for the credit of Larry Winsch." Paine, Webber followed Winsch's direction. Thereafter, Cumis paid AAA the sum of $231,949.61 pursuant to a proof of loss involving, among other matters, Winsch's actions described above. In return, Cumis received from AAA an absolute assignment of all claims AAA might have with respect to Winsch's actions. Cumis is a Wisconsin corporation having its principal place of business in Wisconsin.

Since May or June 1982, Westlands has maintained a sales force whose purpose is to secure time deposits from financial institutions throughout 48 states. Westlands operates by sending mailers, soliciting by telephone and by advertisements in the Wall Street Journal. Westlands' sale staff began contacting business entities in Indiana in September 1982. Of the funds currently on deposit in Westlands' time deposit accounts, 0.007% is derived from Indiana sources.

In like manner, South-Coast solicits accounts in Indiana through brokers such as First United. South-Coast has used brokers exclusively for the purpose of securing time deposits from financial institutions outside the State of California.

Westlands filed its Motion to Dismiss for Lack of In Personam Jurisdiction and for Change of Venue Pursuant to Section 1391(a); 1406(a) and 1404(a) on September 16, 1983. South-Coast filed a similar motion on October 28, 1983. Memoranda in response to such motions were filed by Cumis on November 22, 1983. Both Westlands and South-Coast filed briefs in reply on December 6, 1983. On January 10, 1984, Paine, Webber filed a brief in opposition to the motions to transfer of South-Coast and Westlands. A hearing was held on both motions on April 13, 1984 in South Bend, Indiana. For the reasons set forth below, the motions to dismiss and for change of venue of the defendants, South-Coast and Westlands are denied.

## II.

South-Coast and Westlands contend that they lack the minimum contacts with the State of Indiana that are necessary for this court to exercise personal jurisdiction over them under Indiana Trial Rule 4.4(A)(1) and (A)(3). South-Coast has solicited accounts in Indiana only through brokers such as First United. In its brief, South-Coast reiterates that it does not, nor has it ever (a) had any employee or representative located in Indiana on either a permanent or temporary basis; (b) had any employee or representative who traveled to Indiana for any business purpose; (c) had any agent for service of process in Indiana; (d) had any branch office, sales office, or any other business office of operation in Indiana; (e) owned any equipment or merchandise located in Indiana; (f) owned any interest in any real property located in Indiana; (g) had an affiliation i.e., parent, subsidiary, etc. with any business entity located or formed in Indiana; (h) had officers', directors', or shareholders' meetings in Indiana or (i) maintained any bank accounts in Indiana.

The same statements have also been made by Westlands. On the basis of the foregoing facts, defendants maintain they are not "doing any business" in Indiana within the meaning of T.R. 4.4(A)(1).

Moreover, the banks contend that *assuming arguendo* they did commit a conversion of the cashier's check in California, the injury to AAA's property interest occurred in California. Thus T.R. 4.4(A)(3), which confers jurisdiction on one who caused property damage in this state by any act done outside this state is not applicable to the defendant banks in this case.

■ A federal court has personal jurisdiction over the parties in a diversity action only if a court in the state in which the federal court is sitting would have jurisdiction. *Nelson By Carson v. Park Industries, Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983). Federal Rule of Civil Procedure 4(e) requires that if no federal statute provides for the manner of service, service is governed by the law of the state in which the district court sits. In Indiana, a nonresident submits to the jurisdiction of the Indiana courts if the provisions of T.R. 4.4(A) are met. T.R. 4.4(A) provides in pertinent part:

(A) Acts serving as a basis for jurisdiction. Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or his agent:

(1) doing any business in this state;

\* \* \* \* \* \*

(3) causing personal injury or property damage in this state by an occurrence, act or omission done outside this state if he regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue or benefit from goods, materials, or services used, consumed, or rendered in this state;

This rule has been construed by courts in Indiana to permit a court to assume jurisdiction over nonresident defendants to the limits permitted by the due process clause. *Griese-Traylor Corp. v. Lemmons,* Ind. App., 424 N.E.2d 173, 179 (1981). *See also W & W Farms, Inc. v. Chartered Systems, Etc.,* 542 F.Supp. 56, 59 (N.D.Ind.1982).

In *Griese-Traylor, supra,* the Court of Appeals of Indiana held that Indiana courts need not perform a two-party analysis of whether the above statute allows the exercise of jurisdiction and whether that allowance accords with due process. Rather, a court need only engage in a "single search for the outer limits of what due process permits." *Griese-Traylor, supra,* at 180, citing *Oddi v. Mariner-Denver, Inc.,* 461 F.Supp. 306, 308 (N.D.Ind.1978). *See also Stoutco, Inc. v. Amma, Inc.,* 570 F.Supp. 1376, 1378 (N.D.Ind.1983).

■ The requirement that "minimum contacts" exist between the defendant and the forum state in order for a state court to exercise personal jurisdiction over a nonresident defendant is a well settled principle of law. *World-Wide Volkswagen Corp. v. Woodsen,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In judging minimum contacts, a court properly focuses on "the relationship among the defendant, the forum, and the litigation". *Keeton v. Hustler Magazine, Inc.,* —— U.S. ——, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984); *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). The Due Process Clause of the Fourteenth Amendment to the Constitution of the United States permits personal jurisdiction over a defendant in any state with which the defendant has "certain minimum contacts ... such that the maintenance of the suit does not offend the 'traditional notions of fair play and substantial justice'." *Calder v. Jones,* —— U.S. ——, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984); *International Shoe, supra,* at 316. A further inquiry to be made is whether the nonresident defendant pur-

posely availed himself of the privilege of conducting activities within the forum state, *Shaffer v. Heitner, supra,* at 216, 97 S.Ct. at 2586, and whether the defendant has invoked by act or conduct the benefits and protection of the laws of the forum state. *Hanson v. Deckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

■ Moreover, the test for minimum contacts is a flexible one in which the quantity of contacts is not a controlling criterion. "Whether due process is satisfied must depend upon the quality and nature of the activity in relation to the fair and orderly administration of laws which it was the purpose of the due process clause to insure." *International Shoe, supra,* at 319.

■ In this case, the court finds that defendants have sufficient minimum contacts with the State of Indiana under T.R. 4.4(A) which fully comport with due process requirements. The court turns first to the issue of whether South-Coast and Westlands' activities would qualify under T.R. 4.4(A)(1) as "doing business." This rule has been construed liberally by courts in Indiana. In *Griese-Traylor, supra,* the Court of Appeals of Indiana found that the execution of a sale and purchase contract fell within T.R. 4.4 and that there were no due process or statutory law violations. 424 N.E.2d at 181. Similarly, in *Suyemasa v. Myers,* Ind.App., 420 N.E.2d 1334 (1981), the court held that the defendant's acts of discussing stock transfers with the plaintiffs and of ultimately negotiating a sales contract, all done in Indiana, were sufficient to satisfy any jurisdictional assertion. 420 N.E.2d at 1342.

Further, this court has recently analyzed the limits of jurisdiction in *Stoutco, Inc. v. AMMA, Inc.,* 570 F.Supp. 1376 (1983). In *Stoutco,* plaintiff brought an action against a nonresident corporation, AMMA, to recover payment for goods sold to AMMA. AMMA moved to dismiss for lack of jurisdiction. This court held that AMMA submitted to jurisdiction in Indiana because AMMA "carried on conscious and deliber-

ate activities within the State of Indiana with the purpose of targeting the Indiana market." Of particular note was that AMMA closed sales of its products in Indiana, obtained an Indiana retail merchant's sales tax number, conducted sales in Indiana and solicited business in Indiana through salespersons and advertising.

The evidence reveals that the activities of South-Coast and Westlands in Indiana far exceed those in *Griese-Traylor* and *Suyemasa* both in quantity and quality and bear a closer similarity to those in *Stoutco*.

South-Coast had several contacts with AAA in Indiana relating to the CD and the cashier's check at issue in Count I. It sold to AAA a 180 days $100,000 CD, the fact of which indicates that the amount deposited was payable to AAA on maturity and that interest checks would be mailed to AAA. It issued three separate cashier's checks to AAA on three different dates representing interest payments on the CD. South-Coast also mailed a maturity notice to AAA upon maturity of the CD and issued its own cashier's check, payable to AAA in the amount of $100,000. Finally, South-Coast made payment on said cashier's check to Paine, Webber in Indiana. These direct business contacts and transactions of South-Coast in Indiana comprise the specific events out of which Cumis' complaint arose.

In addition to the above-mentioned direct business contacts between South-Coast and AAA in Indiana, South-Coast also did business in Indiana through United Fund. The following circumstances surrounding the relationship between South-Coast and United Fund establish that First United acted as South-Coast's agent in the sale of certificates of deposit. First, United quoted South-Coast's interest rates to AAA; it did not quote the rates acceptable to AAA. Second, First United received commissions from South-Coast on a transactional basis; it did not receive commissions from AAA. Third, the negotiations with AAA concerning the CD at issue were exclusively handled by First United indicating that First United actually sold the CD on behalf of South-Coast. Fourth, in addition to the two $100,000 certificates of deposit which First United solicited from AAA in Indiana, First United secured nearly five million dollars worth of time deposits from Indiana sources for South-Coast.

The foregoing facts establish that First United acted as South-Coast's agent, and South-Coast is bound by the acts of its agent. Considering the contacts of both South-Coast and its agent, it is clear that South-Coast deliberately targeted the Indiana market and succeeded in tapping the Indiana market for the sale of certificates of deposit. South-Coast was doing business in Indiana and therefore, it should reasonably have anticipated being haled into court in Indiana to handle litigation arising out of the sale of its certificates in Indiana.

Westlands, too, maintains contacts in Indiana that made it reasonable to require Westlands to defend this action here. Westlands and its agent, Professional, solicited the sale of time deposits in Indiana and as a result of this solicitation, Westlands sold a CD to AAA here. Upon maturity of the CD, Westlands mailed a maturity notice to AAA and soon thereafter, issued a cashier's check to AAA in Indiana. Westlands subsequently converted said check by paying it over a forged endorsement.

Between the efforts of its own sales force and the efforts of Professional, Westlands currently derives .007, nearly 1%, of its times deposits from Indiana sources. Westlands had been soliciting business from Indiana since July 1981 and continues to solicit business in Indiana today. The purpose of Westlands own sales force is to secure time deposits from financial institutions throughout the United States. Westlands' sales force operates by sending mailers to financial institutions, soliciting time deposits through telephone calls, and placing advertisements in the Wall Street Journal. The totality of Westlands acts makes it clear that Westlands has undertaken a systematic and deliberate attempt to target the Indiana market. Therefore, it is not

unreasonable for Westlands to be subject to suit in Indiana. Having found jurisdiction under T.R. 4.4(A)(1), the court need not discuss the application of T.R. 4.4(A)(3).

South-Coast and Westlands place great emphasis on *Froning & Deppe, Inc. v. Continental Illinois National Bank*, 695 F.2d 289 (7th Cir.1982), a Seventh Circuit opinion in which the Court of Appeals affirmed a trial court's order refusing jurisdiction over an Iowa bank within the context of due process on policy grounds. In *Froning & Deppe, Inc.*, the trial court dismissed a third party complaint filed in the Northern District of Illinois against a state bank in Iowa for lack of *in personam* jurisdiction. The Iowa bank was charged with conversion.

After reviewing the law as it had developed through *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the court affirmed the trial court on the ground that the Iowa bank's contacts with Illinois were too little to support jurisdiction by a court sitting in Illinois. 695 F.2d at 291–94. Toward the end of its decision the court discussed policy considerations. The court said:

> Most importantly, however, as the district court found, maintenance of personal jurisdiction over South Story [the Iowa bank] in this case would positively hinder the underlying policies of the several states which favor the free flow of commerce and of interstate banking transactions in particular. Upholding jurisdiction here on either Valley National's [the third party plaintiff] "forseeability" theory or its "benefit and protection" theory would have the result of subjecting a bank to suit in any state from which a check cashed by one of its customers might originate, and would more broadly potentially subject anyone who did business with a large national corporation to suit in any state in which the corporation did business, irrespective of the individual's contacts with that state. Plainly, such a result would wreak havoc upon

the orderly conduct of interstate business. *Id.* at 294.

Because of the factual circumstances of this case, South-Coast and Westlands' reliance on *Froning & Deppe, Inc.* is misplaced. Jurisdiction over the non-resident depository bank in *Froning & Deppe, Inc.* was based *solely* on the bank's acceptance of forged checks drawn on a resident bank. The record contained no evidence of sales, services, salespersons or advertising in the forum state or any other efforts to serve the state's market indirectly. This is in direct contrast with the substantial activity in the state of Indiana by Westlands and South-Coast. These banks deliberately targeted Indiana and other states for sales of its time deposits.

## III.

### A.

Having decided that the jurisdiction of this court is proper, the court will now address the question of venue. South-Coast and Westlands contend that even if jurisdiction can be asserted, venue is improper under 28 U.S.C. § 1391(a) which provides:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside or in which the claim arose.

For venue purposes, the residence of a defendant corporation is determined to be the judicial district in which it is incorporated or licensed to do business or is doing business. 28 U.S.C. § 1391(c). The Supreme Court has not yet defined the exact standard for determining whether a corporation is "doing business" for venue purposes. Some courts have equated "doing business" with minimum contacts. *See Cable News Network, Inc. v. American Broadcasting, Etc.*, 528 F.Supp. 365 (N.D. Ga.1981); *Galonis v. National Broadcasting, Inc.*, 498 F.Supp. 789 (D.N.H.1980); *Warner Press, Inc. v. Warner Books, Inc.*, 366 F.Supp. 187 (S.D.Ind.1973). Other

courts have held that a corporation is doing business for venue purposes only if its activities are sufficiently localized in the district such that some state would require it to procure a license. *See Watson McDaniel Co. v. Nat. Pump & Control, Inc.*, 493 F.Supp. 18 (E.D.Pa.1979); *Lubrizol v. Neville Chemical Co.*, 463 F.Supp. 33 (N.D.Ohio 1978); *P.C. Products Corp. v. Williams*, 418 F.Supp. 331 (M.D.Pa.1976), *appeal dismissed*, 556 F.2d 568 (3d Cir. 1977).

■ This court, like Judge Steckler in *Warner Press, Inc. v. Warner Books, Inc.*, *supra*, finds the "licensing test" too restrictive for purposes of interpretation of the "doing business" standard. This court favors the position that doing business for venue purposes should be determined by applying the tests for amenability to service. C. Wright, *Law of Federal Courts*, 247–48 (1983).[1]

■ An examination of the facts in this case reveals that it is not unfair to place venue in the Northern District of Indiana. Both South-Coast and Westlands are California banks that have sought and continue to seek business not only in California, but throughout the 48 states, including Indiana. Both banks employ brokers to serve as their agents for selling time deposits out of state. Both banks have also conducted a substantial amount of business in Indiana, the forum state. Currently, Westlands derives nearly 1% of its time deposits from Indiana sources. South-Coast has sold nearly five million dollars worth of time deposits in Indiana. The contacts of these banks within Indiana include solicitation and execution of certificates of deposit representing promises to pay Indiana residents the principal invested together with interest payments, mailing the certificates to Indiana, mailing interest checks to Indiana, mailing maturity notices to Indiana and finally issuing cashier's checks to Indiana residents upon maturity of the time deposits.

Venue could also be invoked in this forum since the claim arose here within the meaning of § 1391(a). Though there are several tests to determine where a claim arose for purposes of venue, none has emerged as being clearly preferable,[2] particularly when a claim has arisen in more than one district. The Supreme Court of the United States, in *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), did recognize the possibility that a claim may arise in more than one place. The Court stated:

> [T]he broadest interpretation of the language of § 1391(b) (which also relates to where the claim arose) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility ... may be assigned as the locus of the claim. *Id.* at 185, 99 S.Ct. at 2717.

Thus, a claim may arise in more than one district where:

1. It is not clear that the claim arose in only one specific district; and

2. Each of the two districts may be assigned as the locus of the claim with approximately equal plausibility.

Certainly, this case qualifies as the "unusual case" as defined by the Supreme Court in *Leroy*. It is not clear whether the

---

**1.** The sensible answer to this question is to use the same test, and thus make applicable the body of law, employed in determining whether a corporation is doing business within the district for purposes of service of process, recognizing, however, that the question of "doing business" for venue purposes is always a federal question, to be determined by federal standards, while state law may be controlling in determining a corporation's amenability to service of

process. (footnotes omitted). C. Wright, *Law of Federal Courts*, 247–48 (1983).

**2.** *See, e.g., Oce-Industrice, Inc. v. Coleman*, 487 F.Supp. 548 (N.D.Ill.1980) (venue coextensive with personal jurisdiction); *Finance America Credit Corporation v. Kruse Classic Auction Co.*, 428 F.Supp. 135 (E.D.Pa.1977) (place where payment is to be received); *Ryan v. Glenn*, 336 F.Supp. 555 (N.D.Miss.1971) (place of execution of the contract).

claim against the banks arose in only one specific district. The claim may have arisen, in part, in California because the banks paid the cashier's checks there. However, to consider the act of payment alone would be to look at Cumis' claim in a vacuum. Both South-Coast and Westlands solicited and sold certificates of deposit to AAA in Indiana. Pursuant to these certificates of deposit, the banks were obligated to pay out both principal and interest to AAA in Indiana. The banks mailed certificates of deposit, interest payments on the certificates of deposit, maturity notices and the final cashier's checks to AAA in Indiana. Finally, both banks converted the cashier's checks by paying these checks to Paine, Webber in Indiana over improper endorsements which took place in Indiana. These above facts establish that Cumis' claim against the banks also arose in Indiana.

The banks argue that Cumis' claims did not arise in Indiana because there was no activity by either bank in Indiana. A similar argument was considered and rejected by the court in *Factors Etc., Inc. v. Creative Card Co.*, 444 F.Supp. 279 (S.D.N.Y. 1977). In *Factors*, plaintiff brought an action against an Illinois corporation to enjoin it from manufacturing and selling Elvis Presley memorabilia. Defendant objected to venue arguing that it did business in New York only through independent distributors in New York whose only contacts with defendant were by phone or mail. Rejecting defendant's argument, the district court held that New York was a proper venue and noted:

> Were the Court to accept the defendant's argument that the structure of its business insulates it from suit anywhere except in its resident forum, it would be sanctioning a construction of § 1391(a) that gives plaintiff no choice at all in a multi-state tort, and it would be impermissibly cancelling the words "where the claim arose" from the statute. *Id.* at 288.

Similarly, in the present case, South-Coast is attempting to insulate itself from suit anywhere but in its resident forum. Venue in the present case is not based on a singly isolated transaction. Both South-Coast and Westlands derive a substantial financial benefit from time deposits of Indiana residents, and therefore, these banks should not be allowed to avoid litigation in Indiana arising out of one of these time deposits.

■ Under *Leroy*, in the case where the claim arose in more than one district, a plaintiff may chose between those two districts that with approximately equal plausibility may be assigned as the locus of the claim. Equal plausibility is measured in terms of the following factors: the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant. An examination of these factors reveals that the Northern District of Indiana is at least as equally plausible a locus as the Central District of California, if not more plausible.

It would appear that for a majority of witnesses, Indiana would be a more convenient location. The key witness in this case, Larry Winsch, maintained his last known address in South Bend, Indiana. Witnesses employed by AAA having knowledge of the transactions at issue are located here. Moreover, Indiana would be more convenient than California for any employee of Cumis, a Wisconsin corporation having its principal place of business in that state. Finally, witnesses from Paine, Webber's South Bend office who have knowledge of the events at issue in this lawsuit are located in Indiana.

The second factor to be considered is the accessibility of other relevant evidence. Most of the other relevant evidence in this case will not be affected by the locus of the claim in either Indiana or California. For example, documents such as the certificates, the maturity notices, the cashier's checks, the proof of loss filed by AAA, the bond issued by Cumis, and other documents are equally accessible in Indiana or California.

The third factor to be considered is the convenience of the defendant. While it is

true that traveling to Indiana would present an inconvenience to the witnesses to be called by the bank, such testimony can be obtained by means of oral deposition. Moreover, the banks argue that the real defendant in this case is Paine, Webber because it was Paine, Webber that followed the unauthorized direction of Winsch to move funds from the AAA money market account to a non-AAA account in Chicago. This argument places primary responsibility for Cumis' losses on Paine, Webber's South Bend, Indiana office thereby bolstering Cumis' claim that Indiana is the proper forum for the resolution of this case. Thus, having considered all factors, the court is of the opinion that the claim arose, for purposes of § 1391(a), in Indiana.

### B.

■ The final contention of South-Coast and Westlands is that the case should be transferred to the Central District of California as a more convenient forum pursuant to the provisions of 28 U.S.C. § 1404(a) which provides that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The Central District of California is not a more convenient forum since any increased convenience to South-Coast and Westlands by transfer of the case will apparently be offset by increased inconvenience to Paine, Webber and Cumis. The discussion of facts with reference to the issue of proper venue bear this out. It is axiomatic that where transfer will merely shift the inconvenience from one party to another rather than eliminate it, transfer should not be granted. *See e.g., Lemke v. St. Margaret Hospital,* 552 F.Supp. 833, 839 (N.D.Ill. 1982); *Ronco, Inc. v. Plastics, Inc.,* 539 F.Supp. 391, 402 (N.D.Ill.1982); *Oce-Industries, Inc. v. Coleman,* 487 F.Supp. 548, 553 (N.D.Ill.1980). *See also F.D.I.C. v. Citizens Bank & Trust Company,* 592 F.2d 364, 368 (7th Cir.), *cert. denied,* 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979).

Moreover, such a transfer would completely ignore Cumis' choice of forum, a choice which must be afforded deference. *F.D.I.C. v. Citizens Bank & Trust Company,* 592 F.2d 364, 368 (7th Cir.) *cert. denied,* 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979).

Finally, South-Coast argues that it is in the interest of judicial economy to transfer Counts I and II to the Central District of California. Such a transfer would require resolution of a single loss through two separate and distant lawsuits. Resolution of Cumis' claims against the California banks and against Paine, Webber in one trial would reduce the time and energy of the federal judicial system and would avoid duplicative litigation.

Accordingly, it is the order of this court that the motions to dismiss, motions for change of venue and motions for § 1404(a) transfer of venue of defendants, South-Coast Bank and Westlands Bank be, and hereby are, DENIED. SO ORDERED.