SANCO, INC., Plaintiff,

v.

FORD MOTOR COMPANY, Defendant.

No. IP 81–935–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Feb. 2, 1984.
As Amended Feb. 13, 1984.

Eric C. Jodka, J.J. Paul III, Indianapolis, Ind., for plaintiff.

R. Stanley Lawton, Indianapolis, Ind., for defendant.

ENTRY

DILLIN, Chief Judge.

This case comes before the Court on the motion of Ford Motor Company for summary judgment. For the reasons stated be-

low, the motion is granted in part and denied in part.

## Background

This is an action to recover damages allegedly sustained as a result of defects in some 36 Ford CLT–9000 trucks. All of the trucks were manufactured by defendant, Ford Motor Company (hereinafter "Ford"), and allegedly purchased by plaintiff, Sanco, Inc. (hereinafter "Sanco"), from Fairway Ford Sales, Inc., which is not a party to this action.

Sanco sets up its complaint in two counts. Count I alleges that Ford's negligent design and manufacture of the trucks caused Sanco to suffer a loss of profits because it was unable to make use of them in its business. Sanco also alleges that Ford's negligence caused it to suffer a loss of "fixed assets," a phrase we take to indicate the cost of repairing the alleged defects. Count II alleges breach of Ford's implied warranty of merchantability.

Ford has moved for summary judgment on both counts of plaintiff's complaint. More recently, Ford has made an additional motion for summary judgment based on plaintiff's alleged lack of standing to sue.

## Discussion

### Standing

 Sanco's President, Philip A. Wiseman, in his deposition given in connection with related litigation now pending in the Tipton Circuit Court, testified that although Sanco signed the financing documents pertaining to these trucks and had them titled in the name of Sanco, they were actually owned by several partnerships of which Mr. Wiseman served as general partner. Based on this testimony Ford maintains that Sanco never owned the trucks and therefore lacks standing to bring this action.

Whatever the meaning of Mr. Wiseman's apparently contradictory statements concerning ownership of the trucks, it is clear from the same deposition that Ford was well aware from the beginning of the financing negotiations that Sanco would take legal title to the trucks, although a partnershp to be formed by Wiseman would have an equitable interest in them. Wiseman deposition pp. 24–35. Indeed, this arrangement was requested by Ford. Under these circumstances, we think that Ford is now estopped to raise the issue of standing. Ford's motion for summary judgment as to standing is therefore denied.

### Negligence

Ford contends that Sanco should not be permitted to recover the costs of repairing the trucks and the profits lost due to the trucks' down time in a negligence action. Ford characterizes these damages as "economic losses" for which tort law does not provide recovery since the remedy for such injury lies in the sales provisions of the Uniform Commercial Code. Ind.Code 26–1–2–101 to 26–1–2–725.

 "Economic loss" designates the diminution in the value of a product and consequent loss of profits because the product is inferior in quality and does not work for the general purposes for which it was manufactured and sold. *See* Comment, *Manufacturers' Liability to Remote Purchasers for "Economic Loss" Damages—Tort or Contract?*, 114 U.Pa.L.Rev. 539, 541 (1966). Some definitions further limit economic loss to costs of repair and replacement of the product and consequent loss of profits —"without any claim of personal injury or damage to other property." Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum.L.Rev. 917, 918 (1966). For reasons which will appear hereafter, we believe that economic loss is better defined without this limitation.

The only indication of the way Indiana courts would view the issue of whether such losses should be recoverable in a negligence action is provided in *Babson Bros. Co. v. Tipstar Corporation*, 446 N.E.2d 11 (Ind.App.1983) (transfer denied August 31, 1983), where the Indiana Court of Appeals cited with approval the leading case in Illinois, *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982), holding that economic losses

cannot be recovered in a tort action. The *Babson* court, however, went on to affirm an award of lost profits as consequential damages for negligently performed services. This apparent contradiction renders that decision of limited value to our inquiry.

Since our effort to determine whether the Indiana law of negligence is compatible with recovery of economic losses has not been aided by any other opinions of Indiana courts, we have referred to decisions from other jurisdictions and to the works of scholarly commentators to determine the better rule of law.

 The majority of jurisdictions which have considered this issue have not permitted the recovery of economic loss in a negligence action. *E.g., Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.,* 652 F.2d 1165 (3rd Cir.1981); *Donovan Construction Co. v. General Electric Co.,* 133 F.Supp. 870 (D.Minn.1955); *Vulcan Materials Co., Inc. v. Driltech, Inc.,* 251 Ga. 383, 306 S.E.2d 253 (1983); *National Crane Corp. v. Ohio Steel Tube Co.,* 213 Neb. 782, 332 N.W.2d 39 (1983); *Local Joint Executive Bd. of Las Vegas, etc. v. Stern,* 651 P.2d 637 (Nev.1982); *Moorman Mfg. Co. v. National Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982); *Superwood Corp. v. Siempelkamp Corp.,* 311 N.W.2d 159 (Minn.1981); *Clark v. International Harvester Co.,* 99 Idaho 326, 581 P.2d 784 (1978); *Inglis v. American Motors Corp.,* 3 Ohio St.2d 132, 209 N.E.2d 583 (1965); *Trans World Airlines v. Curtiss-Wright Corp.,* 1 Misc.2d 477, 148 N.Y. S.2d 284 (Sup.Ct.1955); *Chrysler Corp. v. Taylor,* 141 Ga.App. 671, 234 S.E.2d 123 (1977); *Anthony v. Kelsey-Hayes Co.,* 25 Cal.App.3d 442, 102 Cal.Rptr. 113 (1972); *Crowell Corp. v. Topkis Construction Co.,* 280 A.2d 730 (Del.Super.Ct.1971). *See Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965).

However, a few jurisdictions allow recovery for economic loss on a negligence theory. *Berg v. General Motors Corp.,* 87 Wash.2d 584, 555 P.2d 818 (1976); *Omni Flying Club v. Cessna Aircraft Co.,* 366 Mass. 154, 315 N.E.2d 885 (1974); *State ex rel Western Seed Production Corp. v. Campbell,* 250 Or. 262, 442 P.2d 215 (1968) *cert. denied,* 393 U.S. 1093, 89 S.Ct. 862, 21 L.Ed.2d 784 (1969); *Spence v. Three Rivers Builders & Masonry Supply,* 353 Mich. 120, 90 N.W.2d 873 (1958).

Dean Prosser summarized the majority rule with respect to recovery of economic losses as follows:

> There can be no doubt that the seller's liability for negligence covers any kind of physical harm, including not only personal injuries, but also property damage to the defective chattel itself, as where an automobile is wrecked by reason of its own bad brakes, as well as damage to any other property in the vicinity. But where there is no accident, and no physical damage, and the only loss is a pecuniary one, through loss of the value or use of the thing sold, or the cost of repairing it, the courts have adhered to the rule ... that purely economic interests are not entitled to protection against mere negligence, and so have denied the recovery.

W. Prosser, *Handbook on the Law of Torts,* § 101 at 665 (4th ed. 1971).

One of the most fully articulated discussions of the considerations underlying this rule is found in Justice Traynor's majority opinion in *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965). In *Seely* the plaintiff sought to recover lost profits and a refund of the purchase price of a defective truck. The California Supreme Court ruled that such damages, although recoverable in a breach of warranty action, were not recoverable in strict liability in tort. The following passage from the majority opinion is pertinent to this case:

> The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the "luck" of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibili-

ty a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands. A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will. Even in actions for negligence, a manufacturer's liability is limited to damages for physical injury and there is no recovery for economic loss alone.

45 Cal.Rptr. at 23, 403 P.2d at 151 (Citations omitted).

We think that the rule embraced by the majority of the jurisdictions is sound for the reasons articulated by Justice Traynor in *Seely*. A tort action traditionally presupposes that the plaintiff has been exposed to an unreasonable risk of injury to his person or his property. Qualitative defects which merely disappoint the buyer's expectations of the product's performance do not expose the user or his property to any risk of physical harm. When a product does not perform as expected, the buyer's remedy should be governed by the rules of contract, which traditionally protect expectation interests.

We are aware that this argument loses some of its appeal when the plaintiff is an ordinary consumer faced with the usual "take-it-or-leave-it" disclaimed warranties from all of the potential sellers. The effect of these disclaimers is that a consumer may have purchased a worthless product and yet be left without a remedy. In his dissent in *Seely* Justice Peters recognized this problem and suggested that consumer buyers in particular should have a tort cause of action to cover purely economic losses.

■ However, the consumer is not entirely remediless in such situations. The Uniform Commercial Code has several provisions which provide courts with room for the exercise of judicial discretion to ensure that substantial justice results in particular cases. See Ind.Code 26–1–2–302 and Ind. Code 26–1–2–719(3) concerning unconscionable clauses and contracts, and Ind.Code 26–1–1–203 imposing a general obligation of good faith. The fact that courts are reluctant to invoke these provisions does not justify the application of tort theory to resolve a problem of sales law.

■ Imposing tort liability on a manufacturer, and thus increasing the cost of doing business, is justified when a product causes personal injury or even when it causes damage to itself or other property under circumstances in which the absence of personal injury is merely fortuitous, such as when an object explodes but does not inflict personal injuries on anyone. Society has a great interest in spreading the cost of such injuries. We believe, however, that the Supreme Court of Indiana would concur in the opinion of most courts that when a plaintiff has suffered only economic loss, as first above defined, the societal interest in cost spreading is insufficient to justify requiring "the consuming public to pay more for their products so that a manufacturer can insure against the possibility that some of his products will not meet the ... needs of some of his customers." *Seely v. White Motor Co.*, 403 P.2d at 151.

Justice Traynor stated another reason why subjecting a manufacturer to liability under a tort theory for economic loss is inappropriate: it would encroach on the decision of the legislature to enact the carefully articulated sales provisions of the Uniform Commercial Code. Ind.Code 26–1–2–101 to 26–1–2–725. *See Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145, 150. Thus, in the present case, if a negligence cause of action were available, Sanco could recover despite any effective disclaimer of warranty under Ind.Code 26–

1–2–316, or any failure of Sanco to adhere to the notice requirements of Ind.Code 26–1–2–607.

We agree that this result would represent an unwarranted extension of the traditional boundaries of tort law into an area that our legislature, by enactment of the Uniform Commercial Code, has provided with a finely tuned mechanism for dealing with the rights of parties to a sales transaction with respect to economic losses. We are confident that the Supreme Court of Indiana would view unfavorably any encroachment of tort law on the sales scheme of the Uniform Commercial Code.

Finally, we note that the *Restatement (Second) of Torts*, § 395 (1965) is in apparent agreement with the majority rule. The Restatement states that a manufacturer is to be liable for "physical harm" caused by its negligence in the manufacture of a chattel dangerous unless carefully made. That section, however, does not extend the manufacturer's liability to encompass purely economic loss.

As indicated above, however, not every instance of damage to the defective product itself is a case of economic loss. Sometimes such damage is properly characterized as physical harm susceptible to tort recovery. In some such circumstances it is difficult to determine which theory of recovery is appropriate. The line between tort and contract must then be drawn "by analyzing the interrelated factors such as the nature of the defect, the type of risk, and the manner in which the injury arose." *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1173 (3rd Cir.1981). Although this analysis sometimes demands fine line drawing, the proper view of the distinction between tort and contract theories requires that the line be drawn, even in close cases.

Two cases decided by the Alaska Supreme Court illustrate the difference in types of damage and the necessity of distinguishing between tort and warranty causes of action. In *Morrow v. New Moon Homes, Inc.*, 548 P.2d 279 (Alaska 1976), the plaintiff purchased a mobile home and proceeded to occupy it. He soon discovered that the roof leaked continually and that it had numerous other defects. He sued the manufacturer under a strict liability theory to recover for the defects. The Alaska Supreme Court noted that the defects merely reduced the value of the product below the price actually paid for it. The defects did not create a situation potentially dangerous to persons or other property; they only disappointed the buyer's expectations of the product's performance. The court therefore refused to allow Morrow to proceed under a strict liability in tort theory and instead relegated him to his rights under contract theory embodied in the Uniform Commercial Code.

In contrast, fire destroyed a mobile home in *Cloud v. Kit Manufacturing Co.*, 563 P.2d 248 (Alaska 1977). Padding stored under the mobile home had been ignited by a heating unit mounted under the structure to keep pipes from freezing. The fire did not result in personal injury and damaged only the mobile home. However, the fire was a sudden event which reduced the product's value in a manner entirely different than in *Morrow*. The defect in *Cloud* created a situation potentially dangerous to persons or other property and the loss occurred as a result of that danger. Recovery in tort was therefore held to be appropriate, even though the damage was confined to the product itself.

It may therefore be said, as a general rule, that when damage is sudden and calamitous, resulting from an occurrence hazardous to human safety, recovery may be had in tort, but damage resulting merely from deterioration, internal breakage, depreciation, failure to live up to expectation, and the like, will be considered economic loss, as to which recovery may be had only on a contract theory.

This discussion should not be concluded without taking note of a recent act of the General Assembly of Indiana, effective September 1, 1983. Such act, Acts 1983, P.L. 297–1983, § 2, amended the Products Liability Act, Ind.Code 33–1–1.5–2 (hidden away by the compiler of Burns Ind.Stat.

Ann., Code Ed., at § 34–4–20A–2), by redefining "physical harm" as follows:

> "Physical harm" means bodily injury, death, loss of services, and rights arising from any such injuries, as well as <u>sudden</u>, <u>major</u> damage to property. <u>The term does not include gradually evolving damage to property or economic losses from such damage.</u> (Underlined words added by amendment.)

Although the revised definition refers to "economic losses" without defining them, and fails to make clear whose property is referred to in the first sentence, we believe that a fair construction of the act, as amended, would lead to precisely the result which we have elaborated in the foregoing pages. The new definition would not, of course, have any retroactive effect but does tend to show that the Indiana legislature and this court are in agreement as to the distinction which we have attempted to make clear as to what type of defect does, and what does not, properly give rise to an action in tort for damage caused to the defective property itself, and for consequential damages proximately caused by sudden, major damage.

■ Turning to the circumstances alleged in plaintiff's complaint, we see that none of the damage to the trucks occurred suddenly or calamitously. There was no violence or collision that exposed plaintiff to a safety hazard. Defects like nonfunctioning gauges, electrical shorts, relay failures, cracking windshields, and frame movement illustrate that plaintiff was simply plagued by a fleet of "lemons." They did not expose plaintiff to any physical hazard. This damage, was the result of qualitative defects, as evidenced by internal breakage and deterioration.

Such circumstances require the conclusion that the safety-insurance policy of tort law is inappropriate in this case. Plaintiff's remedy lies in the expectation-bargain protection policy of warranty law. Defendant is therefore entitled to summary judgment as to Count I of plaintiff's complaint.

## Implied Warranty

■ It is the rule in Indiana that privity must be shown in order to sue for breach of the implied warranty of merchantability. *Candlelight Homes v. Zornes*, 414 N.E.2d 980 (Ind.App.1981). Plaintiff purchased the trucks from Fairway Ford Sales, Inc., and is therefore not in privity of contract with Ford.

An exception to this rule allows a suit in implied warranty despite lack of privity when the contractual arrangements between the manufacturer and the dealer create an agency relationship, and where it is further shown that the manufacturer's agents participated significantly in the sale by means of advertising and personal contact with the buyer. *Thompson Farms v. Corno Feed Products*, 173 Ind.App. 682, 366 N.E.2d 3 (1977). See also *Richards v. Goerg Boat and Motors*, 179 Ind.App. 102, 384 N.E.2d 1084 (1979), which recognizes an exception where significant participation in the sale is found without any showing of an agency relationship.

Sanco alleges that Ford was significantly involved in not only advertising but also purchase negotiations and financing. Sanco predicts that when the degree of Ford's participation is resolved, the applicability of the significant participation exception to the privity rule will become manifest.

There is therefore a genuine issue of material fact as to whether Ford was so closely involved in the sale of the trucks as to bring it into the transaction directly as a seller. Accordingly, Ford's motion for summary judgment must be denied as to Sanco's implied warranty claim.