**MAC'S EGGS, INC., Plaintiffs,**

v.

**RITE–WAY AGRI DISTRIBUTORS, INC., et al., Defendants.**

**Cause No. S85–312.**

United States District Court, N.D. Indiana, South Bend Division.

Dec. 11, 1986.

On Motion for Summary Judgment Jan. 6, 1987.

John D. Walda, Thomas Herr, Fort Wayne, Ind., for plaintiffs.

Arthur G. Surgine, Jr., Fort Wayne, Ind., for Rite-Way Agri Distributors, Inc.

John R. Burns, III, Fort Wayne, Ind., for BODO Development and Meller Batterien.

## MEMORANDUM and ORDER

MILLER, District Judge.

### I. Introduction

This matter is before the court on defendant Bodo Degenhardt's motion to dismiss, which raises three separate theories and will be treated as three separate motions: (1) a motion to dismiss for want of jurisdiction of the person, Fed.R.Civ.P. 12(b)(2); (2) a motion to dismiss the implied warranties claims for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6); and (3) a motion to dismiss the products liability claims for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6). Also pending is a motion for sanctions against Mr. Degenhardt filed pursuant to Fed.R. Civ.P. 56(g) by plaintiff Mac's Eggs, Inc. on August 25, 1986.

### II. Factual Background

#### A.

Mac's Eggs commenced this action by filing a complaint naming Rite-Way Agri Distributors, Inc. ("Rite-Way") and an entity referred to as "Meller USA" as defendants. Mac's Eggs alleged that Rite-Way and Meller USA breached implied warranties of merchantability and fitness for a particular purpose when they sold defective poultry cage equipment to Mac's Eggs. Mac's Eggs also asserted a products liability claim, and alleged that Rite-Way negligently installed the poultry cage equipment. Mac's Eggs sought compensatory damages in the amount of $50,000.00 on each of the three counts in the complaint.

Both defendants named in that complaint answered in a timely fashion. Meller USA indicated in its answer that it was not the entity involved in the transactions alleged in the complaint; the answer implied that some entity was involved in the sale of the poultry equipment, but that "Meller USA" was not that entity.

Mac's Eggs was granted leave to amend its complaint. The first amended complaint was identical to the original complaint in all respects, except that Mr. Degenhardt (who was alleged to be doing business as "Meller Batteries USA") was substituted for "Meller USA". In its answer to that first amended complaint, Meller Batteries USA denied that "Bodo Degenhardt d/b/a Meller Batteries USA sold certain equipment to Rite-Way Agri Distributors, Inc.".

Leave was granted to file a second amended complaint that was identical to

the first amended complaint, except that it named Meller Batterien as a defendant, and alleged that Meller Batterien manufactured a defective product and breached implied warranties of merchantability and fitness for a particular purpose. Bodo Degenhardt, d/b/a Meller Batteries USA, remained as a defendant.

### B.

Mr. Degenhardt moved to dismiss the second amended complaint, asserting three grounds for dismissal: (1) lack of jurisdiction over Mr. Degenhardt's person; (2) failure to state a claim for breach of implied warranties; and (3) failure to state a claim under Indiana's products liability statute. Mr. Degenhardt filed his own affidavit, in which he denied acting as either a factory representative or as a distributor for Meller Batterien, and asserted that he only acted as a "facilitator for the importation of products" produced by the West German company. Mr. Degenhardt also stated in his affidavit that:

> Prior to the date of this litigation, I had never done any business with Mac's Eggs, Inc. nor had I ever been in the State of Indiana for business purposes....

> I do not own any property in Indiana. I do not lease or otherwise have any interest in any property or office in the State of Indiana. I do not have any employees who are located in Indiana nor do I have any employees or agents who regularly travel to the State of Indiana. To the best of my knowledge and belief, I do not conduct any business in the State of Indiana.

Mac's Eggs responded to Mr. Degenhardt's motion by filing four affidavits relating to Mr. Degenhardt's contacts with the State of Indiana:

—Bruce McDaniel, vice-president of Mac's Eggs, stated that he met three times with Mr. Degenhardt at Mac's Eggs' Atwood, Indiana location relating to Meller poultry equipment: in June, 1984, Mr. Degenhardt visited Mac's Egg Farm "to measure the poultry house to see how the Meller Equipment would fit in"; in September, 1984, Mr. Degenhardt returned to Mac's Eggs' Indiana farm "to assess the problems experienced with the Meller Equipment"; in February, 1986, Mr. Degenhardt again discussed problems with the Meller equipment and "replaced six (6) or seven (7) heat sense switches on the motors of the Meller egg collectors". Mr. McDaniel further stated that Indiana is the second largest egg-producing state in the United States, that he was aware of Meller equipment at two other poultry farms in Indiana, and that Mr. Degenhardt never stated that he was not an authorized agent for Meller Batterien.

—William L. Bouse, marketing manager of poultry systems for Farm Tech, Inc. of Leesburg, Indiana stated that he met Mr. Degenhardt at a poultry convention held in Fort Wayne, Indiana in 1982, when Mr. Degenhardt held himself out to be a representative of Meller [1], and offered Mr. Bouse employment.

—Brock Van Meter, president of Farm Tech, Inc. of Leesburg, Indiana, a retailer of farm equipment, stated that he met with Mr. Degenhardt on three occasions in 1986 to discuss a Meller franchise in Indiana.

—James Den Bleyker [2], an employee of Rite-Way prior to January 1, 1985, stated that he met with Mr. Degenhardt in May and June of 1984 within the State of Indiana. On those occasions, Mr. Den Bleyker and Mr. Degenhardt visited Scott Egg Farm and Mac's Eggs Farm to discuss installation of Meller equipment, debts owed, and operating problems.

Mac's Eggs also submitted a photocopy of an advertisement for Meller Cage Systems that appeared in the May, 1986 edition of *The Poultry Tribune*, in which Mr. Degenhardt was named as an "importer/distributor".

---

1. Mr. Bouse's affidavit does not specify whether Mr. Degenhardt represented Meller Batterien or Meller Batteries USA.

2. The court notes that Mr. Den Bleyker's affidavit was not signed when originally filed. Mac's Eggs filed Mr. Den Bleyker's signed affidavit on July 18, 1986.

In reply, Mr. Degenhardt filed a second affidavit that reasserted his statements in his first affidavit and addressed the factual disputes raised by Mac's Eggs' submission. Mr. Degenhardt stated that before December 31, 1983 he had been a Meller Batterien distributor for a district that included Wisconsin, Iowa and other adjoining states, but not Indiana. Mr. Degenhardt admitted meeting Mr. Bouse at the poultry convention in Fort Wayne, Indiana in 1982, but stated that he was not in Indiana as an authorized distributor of Meller Batterien on that occasion, and that he lacked authority to offer Mr. Bouse employment with the West German company. Mr. Degenhardt stated that he discontinued his distributorship on December 31, 1983, but continued with Meller Batterien as a "facilitator" for the importation of Meller products. Mr. Degenhardt agreed that he came to Indiana at the times asserted by Messrs. McDaniel, Van Meter, and Den Bleyker, but claimed that he only appeared as an interpreter for Meller's West German representatives, as a facilitator for importation, and as a representative for the purpose of collecting debts and resolving problems. Mr. Degenhardt asserted that to the extent Meller's advertisement contradicted his assertions, it was false.

Mac's Eggs moved for sanctions, claiming that Mr. Degenhardt had made affidavits in bad faith. Mac's Eggs supported its motion with an affidavit for attorneys fees expended in uncovering Mr. Degenhardt's contacts with Indiana. After Mr. Degenhardt responded, Mac's Eggs supplemented its motion for sanctions and its response to Mr. Degenhardt's dismissal motion, consisting of photocopies of several telexes between Rite-Way and Meller Batterien that Rite-Way had produced in discovery which refer to Mr. Degenhardt as a "troubleshooter" and "factory representative" of the West German company.

### III. Personal Jurisdiction

#### A.

Mr. Degenhardt seeks dismissal of the entire complaint as it relates to him for lack of personal jurisdiction. Fed.R.Civ.P. 12(b)(2). He maintains that his contact with the State of Indiana does not meet the constitutional minimum to warrant *in personam* jurisdiction. Mr. Degenhardt asserts that except for his visits to attempt to resolve the controversy that led to this suit and several other unrelated visits, he had no real contact with the State of Indiana, and those contacts do not warrant the exercise of jurisdiction. Mr. Degenhardt also argues that he was not "doing business" in the State of Indiana as defined under Indiana Trial Rule 4.4(A)(1), and that he does not "regularly solicit business or engage in any other persistent course of conduct" within Indiana under Indiana Trial Rule 4.4(A)(3), so that the Indiana "long-arm statute" cannot reach him. Mr. Degenhardt further asserts that he has not purposefully availed himself of the privilege of doing business in Indiana, so that he would not reasonably expect to answer to suit here. Finally, Mr. Degenhardt asserts that the exercise of jurisdiction would be unreasonable in this action because he has had so little contact with Indiana.

Mac's Eggs claims to have shown significant contacts between Mr. Degenhardt and Indiana: Mr. Degenhardt conducted Meller Batterien's business by appearing at conventions, servicing accounts, and travelling to several Indiana farms to resolve problems. Mac's Eggs argues that the purposefulness of Mr. Degenhardt's contacts is evidenced by his active role in the sale and maintenance of the Meller equipment at Mac's Eggs and two other Indiana egg farms. Mr. Degenhardt should find it is neither unfair nor unreasonable to be "haled into court", Mac's Eggs argues, in the nation's second largest egg producing state. Mac's Eggs also disputes Mr. Degenhardt's contention that jurisdiction should not be exercised over a non-resident whose only contacts with the forum state are infrequent visits to resolve disputes and collect debts.

#### B.

In a challenge for lack of personal jurisdiction over a non-resident defendant under Fed.R.Civ.P. 12(b)(2), a district court is to receive and weigh affidavits,

exhibits, or other evidence submitted by the parties. *Nelson by Carson v. Park Industries, Inc.,* 717 F.2d 1120 (7th Cir.), *cert. denied,* 465 U.S. 1024, 104 S.Ct. 1277, 79 L.Ed.2d 682 (1984); *Metropolitan Sanitary Dist. v. General Electric Co.,* 208 F.Supp. 943, 949 (N.D.Ill.1962). The court must resolve any factual disputes embodied in documents in the plaintiff's favor. *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.,* 726 F.2d 1209, 1215 (7th Cir.1984); *Nelson by Carson v. Park Industries, Inc.,* 717 F.2d at 1123; *International Steel Co. v. Charter Builders, Inc.,* 585 F.Supp. 816, 819 (S.D.Ind.1984). The plaintiff, who bears the burden of proof of jurisdiction, must make a *prima facie* showing of jurisdiction to survive a Rule 12(b)(2) attack. *Marine Midland Bank v. Miller,* 664 F.2d 899 (2nd Cir.1981); *O'Hare International Bank v. Hampton,* 437 F.2d 1173 (7th Cir. 1971).

Resolving the parties'· factual dispute in favor of Mac's Eggs, the facts appear as follows: Mr. Degenhardt was physically present in the State of Indiana on several occasions in the years 1982, 1984, and 1986. He visited Mac's Eggs on at least three occasions to facilitate installation of the equipment, assess problems, discuss payment, and drop off (and perhaps install) replacement parts. He also facilitated the sale of Meller equipment with Scott Farm in Rochester, Indiana and Ancilli Domini Convent in Plymouth, Indiana, and visited those farms on several occasions. Mr. Degenhardt has appeared at poultry and.farm equipment conventions in the State of Indiana on several occasions where he engaged in discussions with two people regarding either distributorships for Meller Batterien or expansioń of his own business (which appears to be called Meller Batteries USA) into the State of Indiana. The advertisement in *The Poultry Tribune* is strong evidence that Mr. Degenhardt is at least an importer of Meller Batterien products to the State of Indiana, if not a distributor and factory representative.

**C.**

As an initial matter, Mr. Degenhardt may have waived the defense of personal jurisdiction by failing to raise it in the answer to the first amended complaint filed by "Meller USA" on February 4, 1986. Mr. Degenhardt admits to conducting business under the name Meller Batteries USA; it is difficult to determine on whose behalf that answer was filed if not Mr. Degenhardt's. The parties have not chosen to proceed on a waiver theory, however.

**D.**

■ A district court's inquiry into personal jurisdiction involves two steps. First, the district court must decide whether the long-arm statute of the state in which it sits allows jurisdiction over the non-resident defendant. Fed.R.Civ.P. 4(e). State law may allow greater protection to non-residents than is mandated by the Due Process Clause of the Fourteenth Amendment, *see e.g., Cook Associates, Inc. v. Lexington United Corp.,* 87 Ill.2d 190, 197–198, 57 Ill.Dec. 730, 733, 429 N.E.2d 847, 850 (1981) (Illinois long-arm statute not coextensive with the Due Process Clause). The matter of state law should be addressed first in order to avoid the constitutional question. *Giotis v. Apollo of the Ozarks,* 800 F.2d 660, 664–665 (7th Cir. 1986). Federal courts look to state law to decide the reach of the state's long-arm statute. *Giotis v. Apollo of the Ozarks,* 800 F.2d at 664–65; *Cote v. Wadel,* 796 F.2d 981, 984 (7th Cir.1986); *Wallace v. Herron,* 778 F.2d 391, 393 (7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986); *Arrowsmith v. United Press International,* 320 F.2d 219 (2nd Cir.1963); *Szakacs v. Anheuser-Busch Companies,· Inc.,* 644 F.Supp. 1121, 1122 (N.D.Ind.1986).

**1.**

■ The first inquiry is easily resolved. Indiana's courts have held repeatedly that Indiana Trial Rule 4.4 [3] should be given the

---

**3.** The Indiana long-arm statute, Trial Rule 4.4(A), provides in part:

Any person or organization that is a non-resident of this state ... submits to the jurisdiction of the courts of this state as to any action

broadest possible interpretation and is limited only by the Due Process Clause. *Dura-Line Corp. v. Sloan,* 487 N.E.2d 469, 470 (Ind.App.1986); *Radio Picture Show v. Exclusive International Pictures, Inc.,* 482 N.E.2d 1159, 1164 (Ind.App.1985); *Griese-Traylor Corp. v. Lemmons,* 424 N.E.2d 173, 180 (Ind.App.1981); *see also Wallace v. Herron,* 778 F.2d at 393; *Nu-Way Systems of Indianapolis, Inc. v. Belmont Marketing, Inc.,* 635 F.2d 617, 619 (7th Cir.1980); *Szakacs v. Anheuser-Busch Companies, Inc.,* 644 F.Supp. at 1122; *First National Bank of Louisville v. Bezema,* 569 F.Supp. 818, 819 (S.D.Ind.1983); *Oddi v. Mariner-Denver, Inc.,* 461 F.Supp. 306, 308 (S.D.Ind.1978). It is unnecessary to consider whether Mr. Degenhardt is "doing any business in this state" or if he "regularly does or solicits business or engages in other persistent courses of conduct" under Indiana Trial Rule 4.4; if his contacts with Indiana are sufficient to allow personal jurisdiction without offense to the Due Process Clause, all requirements of the state law are met.[4]

### 2.

The dispositive question is whether the non-resident defendant, Mr. Degenhardt, has had sufficient contacts with the forum state, Indiana, such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). This inquiry does not turn on a mechanical test, *Internation-*

*al Shoe. Co.,* 326 U.S. at 319, 66 S.Ct. at 159, or on a conceptualistic theory of the place of contracting, performance or injury. *Hoopeston Canning Co. v. Cullen,* 318 U.S. 313, 316, 63 S.Ct. 602, 604, 87 L.Ed. 777 (1943). District courts must address the relationship among the defendant, the forum, and the litigation, *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984); *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977), focusing on whether the non-resident defendant purposefully availed himself of the privilege of conducting activities in the forum state, *Shaffer,* 433 U.S. at 216, 97 S.Ct. at 2586, and whether the defendant, by act or conduct, invoked the benefits and protection of the laws of the forum state. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); *Cumis Insurance Society, Inc. v. South-Coast Bank,* 587 F.Supp. 339, 343 (N.D. Ind.1984). If "purposeful availment" is established, the court should consider whether assertion of personal jurisdiction over the defendant comports with "fair play and substantial justice". *Burger King,* 105 S.Ct. at 2184; *Giotis v. Apollo of the Ozarks,* 800 F.2d at 666.

### (a)

■ Mr. Degenhardt purposefully availed himself of the privilege of doing business in Indiana. Mac's Eggs has demonstrated several business contacts between Mr. Degenhardt and Indiana, some related to Mac's Eggs and some unrelated to Mac's Eggs. While Mac's Eggs has shown no contractual agreement with Mr. Degenhardt relating to the Meller equipment, it has demonstrated that Mr. Degenhardt placed Meller equipment in a stream

---

arising from the following acts committed by him or his agent:

(1) doing any business in this state;

(2) causing personal injury or property damage by an act or omission done within this state;

(3) causing personal injury or property damage in this state by an occurrence, act or omission done outside this state if he regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue or benefit from goods,

materials, or services used, consumed, or rendered in this state; ...

**4.** It is interesting that the distinction between "doing business" and "persistent course of conduct" tracks the distinction the Seventh Circuit now makes between "specific jurisdiction" and "general jurisdiction" in *Giotis,* 800 F.2d at 666 n. 2. Specific jurisdiction is defined as a suit which arises out of or is related to the defendant's contacts with the forum, while general jurisdiction is defined as a suit where the action does not arise from the defendant's conduct.

of commerce that he knew to flow to Indiana. In addition, Mr. Degenhardt travelled to Indiana to inspect the equipment at Mac's Eggs and escorted factory representatives to Indiana to aid in repair and to collect debts.

Mr. Degenhardt is at least a promoter of Meller Batterien, if not a distributor or factory representative; his promotion was directed at the State of Indiana. The exercise of personal jurisdiction over a promoter such as Mr. Degenhardt, who delivers his products into the stream of commerce with the expectation that his products will be purchased by consumers in the forum state where the injury results, does not offend due process under *Burger King* and *World-Wide Volkswagen.*

Mr. Degenhardt cites three cases for the proposition that a district court should exercise no personal jurisdiction over a nonresident whose sole contact with the forum was the matter at issue and whose infrequent personal visits were made to resolve the controversy at bar. *Iowa Electric Light & Power Co. v. Atlas Corp.,* 603 F.2d 1301, 1302 (8th Cir.1979); *Tommills Brokerage Co. v. Loeb, Rhoades & Co.,* 411 F.2d 764 (7th Cir.1969); *Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc.,* 239 F.2d 502 (4th Cir.1956). *Iowa Electric* and *Erlanger Mills* do not comport with the law applied in this circuit. *Wisconsin Electric Manufacturing Co., Inc. v. Pennant Products, Inc.,* 619 F.2d 676 (7th Cir.1980). *Tommills Brokerage* is of doubtful continuing viability, *see Ogden Engineering Corp. v. St. Louis Ship,* 568 F.Supp. 49 (N.D.Ind.1983), and differs from the facts of this case, which involves various business dealings in Indiana, while *Tommills Brokerage* involved a single contract.

(b)

The court finds that Mr. Degenhardt purposefully availed himself of the privilege of conducting activities in Indiana; the issue then becomes whether asserting personal jurisdiction over Mr. Degenhardt comports with fairness and justice. Several factors justify the assertion of jurisdiction: the product was used in Indiana, the alleged defects surfaced in Indiana, an Indiana resident's property was injured, and Indiana has a compelling interest in regulating the conduct of manufacturers and middlemen who expose Indiana residents to the hazards of defective products. *See Giotis v. Apollo of the Ozarks,* 800 F.2d at 668. Mr. Degenhardt's contention that a lack of business contact renders the assertion of jurisdiction unfair is without merit.

E.

Mac's Eggs has made a *prima facie* showing of personal jurisdiction over Mr. Degenhardt sufficient to let the action proceed. Mr. Degenhardt's motion to dismiss for want of personal jurisdiction should be denied.

### IV. Breach of Implied Warranty Claims

A.

Mr. Degenhardt contends that the complaint fails to state a claim for breach of implied warranty for lack of privity of contract. Mr. Degenhardt asserts that the implied warranties of merchantability and fitness for a particular purpose are controlled by Sections 2–314 and 2–315 of the Uniform Commercial Code, (IND.CODE §§ 26–1–2–314 and 26–1–2–315), which only apply to "sellers". The Uniform Commercial Code defines a seller as a person who sells or contracts to sell goods. IND. CODE § 26–1–2–103. Mr. Degenhardt claims he was not a "seller" as defined by the Uniform Commercial Code.

Mac's Eggs responds that Indiana law requires no privity of contract in implied warranty actions. In the alternative, Mac's Eggs contends that the purchaser of equipment has privity with a facilitator or distributor who actively participates in the sale or who attempts to resolve problems with the goods after the sale. Mac's Eggs points to Mr. McDaniel's affidavit to show Mr. Degenhardt's active participation in the sale.

B.

The court first must decide whether to rule on the basis of the pleadings alone, or to treat the motion as one for summary judgment and consider the affidavits both

parties have submitted. Fed.R.Civ.P. 12(b). Resolution of this issue rests wholly within this court's discretion. *Ware v. Associated Milk Producers, Inc.,* 614 F.2d 413 (5th Cir.1980); *Modern Woodcrafts, Inc. v. Hawley,* 534 F.Supp. 1000, 1002 n. 1 (D.Conn.1982).

Mr. Degenhardt and Mac's Eggs have each submitted affidavits, and language in the record suggests that both intended that the court consider the affidavits in addressing the Rule 12(b)(6) motion: In part III of his tripartite dismissal motion, Mr. Degenhardt states, "This defendant offers in support of said motions the statements of this defendant in the attached affidavit ..." The use of the plural "motions" suggests that Mr. Degenhardt spoke of his Rule 12(b)(6) motions as well as his Rule 12(b)(2) motion. Mac's Eggs, at page 14 of its memorandum in opposition to the dismissal motion, refers to Mr. McDaniel's affidavit as establishing facts sufficient to satisfy the requirement of privity.

■ Nonetheless, other reasons lead the court to exclude consideration of the material outside of the pleadings. First, the affidavits deal principally with Mr. Degenhardt's contacts with Indiana; as such, they primarily address the Rule 12(b)(2) motion. Second, neither party has requested the court to treat the 12(b)(6) motions as summary judgment motions; to so treat the motions would require notice to the parties to allow them to file additional materials relevant to a summary judgment motion, Fed.R.Civ.P. 12(b); *compare Lazzara v. Howard A. Esser, Inc.,* 802 F.2d 260, 272 n. 8 (7th Cir.1986), and little time remains before the scheduled trial date. Third, the material contained in the affidavits would not resolve the issues to be addressed on summary judgment. See 5 Wright & Miller, *Civil Practice and Procedure* § 1336, at 679 (1969).

For the foregoing reasons, the court elects to treat Mr. Degenhardt's dismissal motion as what he called it: a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.

### C.

Dismissal under Rule 12(b)(6) generally is proper only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Papapetropoulous v. Milwaukee Transport Services,* 795 F.2d 591 (7th Cir.1986). A plaintiff need not set out in detail the facts upon which a claim is based, but must allege sufficient facts to outline the cause of action. *Doe ex rel. Doe v. St. Joseph's Hospital,* 788 F.2d 411 (7th Cir.1986); *Benson v. Cady,* 761 F.2d 335 (7th Cir.1985). The court must take the complaint's allegations as true and view them in the light most favorable to the plaintiff. *Ellsworth v. City of Racine,* 774 F.2d 182 (7th Cir.1985); *Powe v. City of Chicago,* 664 F.2d 639 (7th Cir.1981).

■ Mac's Eggs' second amended complaint alleges that all three defendants sold to Mac's Eggs a cage system that Meller Batterien manufactured and Mr. Degenhardt distributed. The court cannot say beyond doubt that Mac's Eggs cannot prove that Mr. Degenhardt either was in privity with Mac's Eggs or had an agency relationship with the seller and participated significantly in the sale. *Sanco, Inc. v. Ford Motor Co.,* 579 F.Supp. 893 (S.D.Ind. 1984), *aff'd* 771 F.2d 1081 (7th Cir.1985); *Candlelight Homes v. Zornes,* 414 N.E.2d 980 (Ind.App.1981); *Richards v. Goerg Boat and Motors,* 179 Ind.App. 102, 384 N.E.2d 1084 (1979); *Thompson Farms v. Corno Feed Products,* 173 Ind.App. 682, 366 N.E.2d 3 (1977). Accordingly, Mr. Degenhardt's motion to dismiss Mac's Eggs' implied warranty claim should be denied.

### V. Products Liability Claim

#### A.

Mr. Degenhardt seeks dismissal of the product liability claim in Count II of the second amended complaint for failure to state a claim upon which relief can be granted, due to failure to assert the sort of injury for which Indiana's products liability law provides a remedy. Fed.R.Civ.P. 12(b)(6). Indiana has codified the law of products liability. IND.CODE § 33–1–1.-

5–2 *et seq.* The statute defines "physical harm" and "seller" as follows:

'Physical harm' means bodily injury, death, loss of services, and rights arising from any such injuries, as well as sudden, major damage to property. This does not include gradually evolving damage to property or economic loss from such damage.

'Seller' means a person engaged in business as a manufacturer, a wholesaler, a retail dealer, a lessor, or a distributor.

IND.CODE § 33–1–1.5–2.

Mr. Degenhardt maintains that the complaint alleges "gradual evolving damage to property" rather than "sudden, major damage to property" and so fails to allege the sort of physical harm for which recovery may be had under the statute. Mr. Degenhardt also maintains, on the basis of his affidavits, that he was not a "seller" under the act and so cannot be liable.

Mac's Eggs maintains that its answers to interrogatories relate that the Meller equipment killed thousands of its chickens so as to present a factual question of the rapidness of its property loss. Mac's Eggs does not respond to Mr. Degenhardt's argument relating to the term "seller" in the product liability statute.

### B.

The complaint alleges that Mr. Degenhardt acted as a distributor for Meller Batterien in the instant transaction. A court deciding a Rule 12(b)(6) motion takes the complaint's allegations as true; no further allegation is necessary to bring Mr. Degenhardt within the statutory definition of "seller" for purposes of the 12(b)(6) motion. Mr. Degenhardt's factual contention that he was not a distributor does not cause the complaint to fail to state a claim.

### C.

The second amended complaint presents no particular allegation as to damage. Count II, which contains the products liability claim, re-asserts nine paragraphs from Count I, including a paragraph alleging that the cage system "failed to function properly" in that the watering system leaked, the ventilation and feed delivery systems did not work properly, several motors burned out, and the system's poor design left chickens unable to reach the water source. Count II then stated the products liability claim as follows: "The Defendants have placed unto [sic] the stream of commerce products which are unreasonably dangerous because of their defects in manufacturing, and said defects have caused damages for the Plaintiff in the amount of $50,000.00."

The court cannot say beyond doubt that Mac's Eggs could not prove, consistent with that allegation, "physical harm" as defined in Indiana law. See *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Papapetropoulous v. Milwaukee Transport Services*, 795 F.2d 591 (7th Cir. 1986). A complaint must also, however, state allegations, either direct or circumstantial, concerning each element necessary for recovery under the relevant legal theories. *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Development Co.*, 758 F.2d 203 (7th Cir.1985); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). Mac's Eggs' complaint does not set forth the nature of the damage, the rapidity of the damage, or the nature of the harm giving rise to the damage.

### 1.

Mac's Eggs seems to expect the court to consider its answers to interrogatories served upon it by Rite-Way. While the court elected not to refer to matters beyond the pleadings when deciding the motion to dismiss the implied warranty count, the matters outside the pleadings appear much more likely to lead to resolution of the motion to dismiss the products liability count. Those interrogatory answers explain the damages Mac's Eggs claims: those damages consist of repair and restoration expenses, excessive hen loss from November, 1984 to December, 1985 (5,511 more than normal; normal loss is stated as 5,729) and resultant lost profits, and excessive hen loss from December, 1985 to February, 1986 (4,143 more than normal; nor-

mal loss is stated as 1,018) and resultant lost profits. Those interrogatory answers, if considered, would indicate that some of Mac's Eggs' claim is based upon a loss of chickens occurring over a period of fifteen months. The issue, then, if materials outside the pleadings are considered, is whether such a loss constitutes compensable "physical harm" under Indiana's products liability law. IND.CODE § 33–1–1.5–2.

### 2.

Mr. Degenhardt relies upon *Sanco, Inc. v. Ford Motor Company*, 579 F.Supp. 893 (S.D.Ind.1984), *aff'd* 771 F.2d 1081 (7th Cir. 1985), for the proposition that Indiana's products liability act does not allow recovery of mere "economic loss". Mac's Eggs responds that *Sanco* and *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982), which was cited with approval in *Babson Brothers Co. v. Tipstar Corp.*, 446 N.E.2d 11 (Ind.App.1983), establish only that gradual economic loss or "disappointed expectations" cannot be recovered. Mac's Eggs asserts that loss of livestock is neither a gradual economic loss nor merely "disappointed expectations".

Indiana's courts have not interpreted the statutory definition of "physical harm"; *Sanco* was decided on the basis of the statute before the legislature added that definition in 1983. *Sanco*, 579 F.Supp. at 898–899. Judge Dillin's analysis in *Sanco* is significant, however, in that he believed that his ruling was consistent with the later amendment. *Id.* Judge Dillin held that under Indiana law,

> It may therefore be said, as a general rule, that when damage is sudden and calamitous, resulting from an occurrence hazardous to human safety, recovery may be had in tort, but damage resulting merely from deterioration, internal breakage, depreciation, failure to live up to expectation, and the like, will be considered economic loss, as to which recovery may be had only on a contract theory.

579 F.Supp. at 898. A court determining whether injury to property was "sudden and calamitous" or "gradually evolving" should consider "the interrelated factors such as the nature of the defect, the type of risk, and the manner in which the injury arose". *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1173 (3rd Cir.1981).

Judge Dillin concluded in *Sanco* that Indiana law focuses on the need to hold manufacturers liable in tort only where their products create unreasonable risks of harm, and leave consumers who are merely disappointed with a product to recovery in contract. 579 F.Supp. at 896–897; *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965). The Seventh Circuit concurred, 771 F.2d at 1084–86, as does this court.

### 3.

■ As noted in connection with the motion to dismiss the implied warranties claim, acceptance of materials outside the pleadings and conversion of a dismissal motion to a summary judgment motion are more appropriate when the materials are comprehensive and will facilitate a rational determination of the motion. *Ware v. Associated Milk Producers, Inc.*, 614 F.2d 413 (5th Cir.1980); *Modern Woodcrafts, Inc. v. Hawley*, 534 F.Supp. 1000, 1002 n. 1 (D.Conn.1982); 5 Wright & Miller, *Federal Practice and Procedure* § 1366 (1969). It appears to the court that it would be proper to treat Mr. Degenhardt's 12(b)(6) motion to dismiss the products liability claim as a motion for summary judgment.

Rule 12(b), Fed.R.Civ.P., requires the court to afford the parties a reasonable opportunity to present all material that Rule 56 makes pertinent to a summary judgment motion. Recognizing that this cause is scheduled for trial on January 12, 1987, the court affords the parties until December 29, 1986 to file additional material for the court's consideration under Rule 56.

### VI. Mac's Eggs' Motion for Sanctions

Mac's Eggs moved for sanctions pursuant to Fed.R.Civ.P. 56(g), contending that Mr. Degenhardt made his first affidavit in bad faith. Mac's Eggs contends that Mr. Degenhardt knew the falsity of his statements that he had never done business with Mac's Eggs or conducted any business

in the State of Indiana, and further contends that Mr. Degenhardt submitted the affidavit solely for the purpose of delay. Mac's Eggs contends that it had to undertake considerable investigation to uncover Mr. Degenhardt's contacts with Indiana, and that Mr. Degenhardt did not refute those contacts when Mac's Eggs' affidavits confronted him with them. Mr. Degenhardt merely admitted that he had appeared at conventions in Indiana as well as making visits to Mac's Eggs Farm and other Indiana farms employing Meller Batterien equipment. Thus, Mac's Eggs asserts, Mr. Degenhardt knowingly attested to lies.

Mr. Degenhardt argues that sanctions should not be awarded. Mr. Degenhardt notes that Mac's Eggs carries the burden of proof of establishing personal jurisdiction, which Mac's Eggs would have had to demonstrate in this litigation in any event.

█ Rule 56(g) applies only to affidavits submitted pursuant to Rule 56. Fed.R. Civ.P. 56(g). Mr. Degenhardt filed his affidavit in conjunction with Fed.R.Civ.P. 12(b)(2). Mac's Eggs cannot claim sanctions under Rule 56(g) for an affidavit not presented pursuant to Rule 56, even if the affidavit was made in bad faith or solely for the purpose of delay.

### VII. Diversity Jurisdiction

An additional issue, which the court must raise on its own motion, remains. Mac's Eggs asserts that this court has jurisdiction due to the parties' diverse citizenship. 28 U.S.C. § 1332. An examination of the pleadings, however, indicates that Mr. Degenhardt's citizenship has not been pleaded. The parties agree that he is a resident of the State of Wisconsin. If, as seems likely, he is also a citizen of Wisconsin, or for that matter of any state other than Indiana, the court has diversity jurisdiction. Residency is not, however, synonymous with citizenship, *Steigleder v. McQuesten,* 198 U.S. 141, 25 S.Ct. 616, 49 L.Ed. 986 (1905); *Krasnov v. Dinan,* 465 F.2d 1298 (3rd Cir.1972); *see also,* 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* 2d § 3611 (1984), and the court thus cannot yet find itself to have jurisdiction over this action.

The Seventh Circuit Court of Appeals recently has stressed, in no uncertain terms, the district courts' obligation to examine subject-matter jurisdiction at the outset of the litigation. *Stockman v. La-Croix,* 790 F.2d 584 (7th Cir.1986); *Goldstick v. ICM Realty,* 788 F.2d 456 (7th Cir.1986). *Beuthe v. Britt Airlines, Inc.,* 787 F.2d 1194 (7th Cir.1986); *Kanzelberger v. Kanzelberger,* 782 F.2d 774 (7th Cir. 1986); *Wisconsin Knife Works v. National Metal Crafters,* 781 F.2d 1280 (7th Cir. 1986); *Jason's Foods, Inc. v. Peter Eckrich & Sons, Inc.,* 768 F.2d 189 (7th Cir.1985); *Casio, Inc. v. S.M. & R. Co.,* 755 F.2d 528 (7th Cir.1985). Accordingly, the court will allow the parties twenty days within which to stipulate, or to submit proof of, Mr. Degenhardt's citizenship.

### VIII. Conclusion and Order

For the foregoing reasons, the court now:

1. DENIES defendant Bodo Degenhardt's motion to dismiss for want of jurisdiction over the person;

2. DENIES defendant Bodo Degenhardt's motion to dismiss the implied warranties claims for failure to state a claim upon which relief can be granted;

3. Notifies the parties that the court shall treat defendant Bodo Degenhardt's Rule 12(b)(6) motion to dismiss the products liability claim as a motion for summary judgment, and affords the parties until December 29, 1986 to file material made pertinent to such a motion by Rule 56;

4. DENIES the plaintiff's motion for sanctions under Rule 56(g); and

5. Affords the parties twenty days within which to stipulate, or to submit proof of, Mr. Degenhardt's citizenship.

SO ORDERED.

### ON MOTION FOR SUMMARY JUDGMENT

(At the request of the court, material duplicative of the December 11, 1986 Memorandum and Order is deleted.)

This matter is before the court on the defendant Bodo Degenhardt's motion to

dismiss the products liability claim, converted to a summary judgment motion on December 11, 1986. Fed.R.Civ.P. 12(b). On that date, the court invited the parties to file supplementary materials on the question by December 29, 1986. Plaintiff Mac's Eggs, Inc. filed a memorandum of law on December 29, 1986, together with Bruce McDaniel's supporting affidavit. Defendants Degenhardt and Meller Batterien did not respond. The matter to be resolved is whether the materials submitted by Mac's Eggs show "gradual evolving damage to property" or "sudden, major damage to property" so as to meet the statutory requirement of physical harm.

 Indiana's products liability act does not allow recovery of mere "economic loss". *Sanco, Inc. v. Ford Motor Company,* 579 F.Supp. 893 (S.D.Ind.1984), *aff'd* 771 F.2d 1081 (7th Cir.1985); *Babson Brothers Co. v. Tipstar Corp.,* 446 N.E.2d 11 (Ind.App.1983); *Moorman Manufacturing Co. v. National Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982). "Mere economic loss" is a term of art which has been defined as not being mere gradual economic loss or merely disappointed expectations. Mac's Eggs asserts that loss of livestock is neither a gradual economic loss nor merely "disappointed expectations".

Indiana's courts have not interpreted the statutory definition of "physical harm"; *Sanco* was decided on the basis of the statute before the legislature added that definition in 1983. *Sanco,* 579 F.Supp. at 898–899. Judge Dillin's analysis in *Sanco* is significant, however, in that he believed that his ruling was consistent with the later amendment. *Id.* Judge Dillin held that under Indiana law,

> It may therefore be said, as a general rule, that when damage is sudden and calamitous, resulting from an occurrence hazardous to human safety, recovery may be had in tort, but damage resulting merely from deterioration, internal breakage, depreciation, failure to live up to expectation, and the like, will be considered economic loss, as to which recovery may be had only on a contract theory.

579 F.Supp. at 898. A court determining whether injury to property was "sudden and calamitous" or "gradually evolving" should consider "the interrelated factors such as the nature of the defect, the type of risk, and the manner in which the injury arose". *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.,* 652 F.2d 1165, 1173 (3rd Cir.1981).

 Judge Dillin concluded in *Sanco* that Indiana law focuses on the need to hold manufacturers liable in tort only where their products create unreasonable risks of harm, and leave consumers who are merely disappointed with a product to recovery in contract. 579 F.Supp. at 896–897; *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965). The Seventh Circuit concurred, 771 F.2d at 1084–86, as does this court.

 The sort of injury shown in Mr. McDaniel's affidavit is not, as a matter of law, the sudden sort of calamitous injury to which the statute applies. A greater loss of birds than expected over several months is more akin to disappointment with the machinery's performance that to "sudden and calamitous" damage "resulting from an occurrence hazardous to human safety, a clear and present danger". *Sanco, Inc. v. Ford Motor Company,* 579 F.Supp. at 898. The injury, sustained over a period of months, presented no risk of sudden loss to a substantial amount of Mac's Eggs' property at any given time. Human life was never endangered. While a bird's death is, as Mac's Eggs contends, a violent injury to that bird, the injury is simply not, as a matter of law, the sort compensable under Indiana's products liability statute. This was not "sudden, major damage to property". IND.CODE § 33-1-1.5-2.

On this basis, the court ORDERS that defendants' converted partial summary judgment motion as to Count II of the complaint is GRANTED.

SO ORDERED.